**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
-------------------------------------------------------------X
JOSEPH C. WEBER,        :
              :
        Plaintiff,  :
              :
     v.       :  CASE NO.: 08-CV-00977 (DRD/MAS)
              :
ATLANTIC ZEISER/ORELL FUSSLI, :
              :
        Defendant. :
-------------------------------------------------------------X

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

   Plaintiff Joseph C. Weber, by and through his undersigned counsel, as and for his

Amended Complaint in this action against Defendant Atlantic Zeiser/Orell Fussli ("Atlantic

Zeiser" or the "Company"), hereby alleges as follows:

## NATURE OF THE CLAIMS

   1.   This is an action for declaratory, injunctive and equitable relief, as well as

monetary damages, to redress Defendant's unlawful employment practices against Plaintiff,

including its discriminatory treatment and harassment of Plaintiff due to his Jewish

ancestry/ethnicity, religion, and age, and its unlawful retaliation against him after he complained

about such unlawful discrimination, harassment and retaliation, in violation of Section 1981 of

the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); the Age Discrimination in Employment Act

of 1967, 29 U.S.C. § 621 et seq. ("ADEA"); the New Jersey Law Against Discrimination,

N.J.S.A. 10:5-1 et seq. ("NJLAD"); the New York State Human Rights Law, New York

Executive Law § 290 et seq. ("NYSHRL"); and the New York City Human Rights Law, New York Administrative Code § 8-101 et seq. ("NYCHRL").

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under Section 1981, Title VII and the ADEA.  The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant is a corporation doing business in the State of New Jersey and is subject to personal jurisdiction in this district.

## PARTIES

4.      Plaintiff Joseph C. Weber is a resident of New York State, Kings County.  At all relevant times, Mr. Weber is and has been a resident of New York City and the State of New York, worked 30 years prior to his termination for Defendant most recently in New Jersey, and met the definition of an "employee" under all applicable statutes.

5.      Mr. Weber was employed by Atlantic Zeiser from in or around 1976, through August 24, 2006, when he was terminated in retaliation for raising complaints about the severe discrimination and harassment that Atlantic Zeiser subjected him to based on his age, Jewish ancestry/ethnicity and religion.

6.      Upon information and belief, Defendant Atlantic Zeiser/Orell Fussli ("Atlantic Zeiser" or the "Company") is engaged in the manufacture and sale of serial numbering technology in several states, including New Jersey as well as the State and City of New York.  At

all relevant times, Atlantic Zeiser has met the definition of an "employer" under all applicable statutes, and currently maintains its U.S. headquarters in West Caldwell, New Jersey.

## PROCEDURAL REQUIREMENTS

7.      Mr. Weber has complied with all statutory prerequisites to filing this action.

8.      On or about September 1, 2006, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII and the ADEA.  The allegations of discrimination and retaliation contained in the charge arise out of the same facts alleged herein.

9.      On or about June 26, 2007, the EEOC issued a determination finding probable cause on the merits of Mr. Weber's charge of retaliation in violation of Title VII and the ADEA. Specifically, the EEOC "determined that the evidence obtained during the investigation establishes a violation of the statute, and that the evidence as a whole indicates that [Plaintiff] was retaliated against for complaining of discrimination and that his age was also a factor in [Defendant's] decision to terminate his employment."  A copy of the EEOC determination is attached hereto as Exhibit A and incorporated herein by reference.

10.     On or about June 29, 2007, Plaintiff also received his right to sue letter from the EEOC concerning his allegation of discrimination in violation of Title VII and the ADEA, for which probable cause was not found.  This action was commenced in the Eastern District of New York on September 25, 2007, within 90 days of Plaintiff's receipt of notice of his right to sue from the EEOC.

11.     Although the EEOC engaged with the parties in an informal conciliation process to resolve Plaintiff's claims of retaliation under Title VII and the ADEA, after finding probable

cause on the merits of these claims, the conciliation process was unsuccessful, and Plaintiff received notice of his right to sue for retaliation under Title VII and the ADEA from the EEOC on January 17, 2008.  This Amended Complaint, asserting these additional retaliation claims, is filed within 90 days of Plaintiff's receipt from the EEOC of his right to sue for these claims.

12.     Prior to the commencement of this action, a copy of the original Complaint was served on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of § 8-502 of the New York City Administrative Code.

13.     Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

**Mr. Weber's 30-Year Career at Atlantic Zeiser**

14.     Mr. Weber is an observant Orthodox Jew and was born on October 1, 1946 in the Bergen-Belsen concentration camp to parents who were Holocaust survivors.

15.     Mr. Weber began his career at the Company in 1976, when he accepted a position as a customer service representative at its U.S. headquarters in Brooklyn, New York.

16.     Mr. Weber quickly distinguished himself as an exemplary employee, and was steadily promoted through the ranks to become Vice President/Director of Customer Service.

17.     Over the course of his employment at the Company, Mr. Weber never received any complaints concerning his work, and was never subjected to discipline of any sort.  To the contrary, the Company consistently commended Mr. Weber not only for the superior quality of his work, but also for his commitment to the Company and specifically his willingness to work nights and weekends.

18.     Mr. Weber has been an Orthodox Jew all his life.  As part of his religious observance and identification with his Jewish ancestry, Mr. Weber, like most Orthodox Jewish men, covers his head with a *yarmulke* at all times, including while at work.  Similarly, Mr. Weber does not work on annual Jewish holidays, or on the Jewish Sabbath, which begins on Friday evenings.

19.     The Company readily accommodated every scheduling modification Mr. Weber requested in connection with his religious observance for decades.  At all relevant times, the Company had knowledge of and expressly sanctioned these accommodations.

20.     In or around 1998-99, Bruno Masser, a non-Jewish, German male, was transferred from his position with Atlantic Zeiser's corporate parent in Germany to the IT department of its U.S. headquarters.

21.     Although Masser did not work directly with Mr. Weber, he learned that Mr. Weber was Jewish and began making pointed, discriminatory statements to Mr. Weber derogating Judaism and Mr. Weber as a Jew, often in front of other employees, including Mr. Weber's direct reports, as well as to colleagues at the Company.

22.     Similarly, Masser would frequently relate to Mr. Weber and other employees at the Company conspiracy theories such as the tired, anti-Semitic canard that "the Jews are trying to take over the world," and his firmly held belief that they need to be prevented from doing so. Masser also sought to marginalize Mr. Weber's position at the Company, and even stated to Mr. Weber: "you don't need to be in an office and I'll get you out."

23.     However, knowing that the Company's officers in general, and in particular its CEO Walter Klinger, had always been accommodating of his religious needs and understanding

5

of his identity as an Orthodox Jew, Mr. Weber brought Masser's statements to Klinger's attention.

24.     In response, Masser was promptly removed from Atlantic Zeiser's U.S. headquarters and returned to Germany.

**Mr. Weber Suffers Discrimination and Harassment at the Direction of Atlantic Zeiser's New CEO**

25.     In or around 2005, Atlantic Zeiser's German-based parent corporation appointed Tom Coco to succeed Walter Klinger as CEO of the Company's U.S.-based operations.

26.     Despite Mr. Weber's unblemished track record of exemplary service as the Company's longest-serving employee, Coco quickly targeted Mr. Weber for discrimination and harassment because of his Jewish ancestry/ethnicity, age, and religion.

27.     By way of example only, Coco described Mr. Weber's compensation as an unwelcome "expense" for the Company, and explained that the Company's German-based President and CEO, Klaus Oesch, wanted to cut-down on such expenses.  As the lowest-paid executive at the Company, Mr. Weber understood that Coco was referring to the "expense" of the contractual benefits and deferred compensation that Mr. Weber would receive if he continued working at the Company until retiring at the age of 65.

28.     Moreover, Coco's discriminatory enthusiasm for accelerating Mr. Weber's retirement emboldened other employees to make similar, harassing comments about Mr. Weber's age.  For example, Connie Stoerk, the German-born, Caucasian Director of Atlantic Zeiser's engineering department, would openly attribute minor, seemingly innocuous workplace occurrences to the fact that Mr. Weber was approaching age 65.  Stoerk also ridiculed and

mocked Mr. Weber by telling him that "the way you walk, the way you stand, [and] the way you speak" demonstrated that he was too old to continue working at the Company.

29.     Coco and Oesch also permitted Bruno Masser to return from Germany to work at Atlantic Zeiser's U.S. offices, despite Masser's documented record of anti-Jewish rhetoric and hostility to Mr. Weber because of his Jewish ancestry and religion.

30.     Upon Masser's return to the Company's U.S. offices, Stoerk escalated her harassment of Mr. Weber with renewed vigor, and expressed optimism that "now things will change" for Mr. Weber and other Jewish employees with Coco in control of the Company in the wake of Klinger's retirement.

31.     By way of example only, Masser stated to Mr. Weber and other employees that although "the Jews control the world" and the "Jews have too much power," appropriate measures would soon be taken to prevent the Jews from obtaining control over Atlantic Zeiser. Masser also stated that the Company would soon reverse its longstanding accommodation of Mr. Weber's religious observance.

32.     Encouraged by Masser's return to Atlantic Zeiser's U.S. offices with the full approval of Coco and Oesch, other employees possessing animus against Jews, and against Mr. Weber on that basis, began to harass Mr. Weber with impunity.  By way of example only, Stoerk began referring to Mr. Weber as "little doggy," a phrase derived from the German *schweinhund*, which was popularized as an anti-Jewish slur during the Holocaust.  Stoerk also condemned Jews for "sucking money" out of Germany in the form of reparations for the Holocaust.

33.     Indeed, other employees at Atlantic Zeiser approached Mr. Weber to express their own feelings of shock and discomfort at the frequency and intensity of Stoerk's anti-Jewish

invective, as well as her evident hostility for Mr. Weber because of his Jewish ancestry and religious observance.

**Mr. Weber is Demoted and Terminated in Reprisal for His Complaints of Unlawful Discrimination and Harassment**

34.     After resigning himself to the fact that Stoerk and Masser were simply unwilling to desist from making harassing comments about his Jewish ancestry/ethnicity, religion, and age, Mr. Weber formally complained about their conduct in a meeting with Michael Raimondo, the Company's Director of Operations and Personnel.  But rather than address Mr. Weber's complaints, Raimondo indicated that he was powerless to intervene against Stoerk or Masser, and advised Mr. Weber that Coco was the only individual at Atlantic Zeiser with the authority to restrain them.

35.     However, when Mr. Weber complained to Coco about discrimination and harassment by Stoerk and Masser, Coco advised him that Masser "had [German-based President and CEO] Oesch's ear," and that he was powerless to take any action against Stoerk or Masser in response to Mr. Weber's complaints because the discrimination and harassment were "being directed by Bruno Masser."

36.     Instead, on or about July 1, 2006 – within days of Mr. Weber's protected complaints of discrimination – Coco instructed Mr. Weber to vacate the office he had occupied for years and transfer instead to a small, cubicle workspace.

37.     Coco also stripped Mr. Weber of supervisory authority over his four direct reports, and ordered that Mr. Weber himself was to report to a junior employee with less than two years of experience at the Company and no prior experience in customer service.

38.     Coco refused to explain the basis for these actions and would not identify any performance-related or business concerns that might have warranted such a sudden and humiliating demotion.

39.     The following day, Mr. Weber approached Coco and asked him to reconsider his decision to demote him – after nearly 30 years of loyal and exemplary service to the Company. Mr. Weber also asserted that the demotion was an act of discrimination based on his age and being Jewish, as well as a reprisal for his earlier complaints.  However, Coco again refused to provide Mr. Weber with any sort of explanation, and merely confirmed that, "This is how we're going to do it now."

40.     Shocked and distressed by the sudden change in his role at the Company, Mr. Weber obtained approval to exercise approximately three weeks of accrued vacation time.

41.     During this time off, Mr. Weber sought the advice of an attorney in connection with the harassment and apparent retaliation that he was experiencing at the Company in reprisal for his protected complaints of discrimination.

42.     On or about July 7, 2006, Mr. Weber's attorney sent a letter to Coco questioning the Company's apparent mistreatment of Mr. Weber and asserting that the Company may have exposed itself to potential claims of discrimination, harassment and hostile work environment on the basis of Mr. Weber's age, ancestry and religion.

43.     Undaunted, Coco responded to this letter by redoubling the Company's campaign of discrimination and retaliation against Mr. Weber when he returned to work on July 31, 2006. For example, Coco cancelled Mr. Weber's Exxon gas card and corporate American Express card without explanation, and refused to provide Mr. Weber with new computer software that was

installed for other employees or with copies of the Company's new customer return and credit-related policies, which were necessary for the performance of his job.

44.     Mr. Weber was also ignored and ostracized by his colleagues, who had been informed of his decision to retain counsel in connection with his complaints of discrimination and harassment at the Company, another form of insidious retaliation intended to punish Mr. Weber for seeking to protect his civil rights.

45.     The Company's discriminatory and retaliatory motivation was also evidenced by Coco's admissions that, among other things, he and the Company had merely "indulged" Mr. Weber when it "let" him observe Jewish holidays by accommodating his schedule for the past 30 years, and that the Company did not have any legal obligation to do so.

46.     Finally, on August 24, 2006, Coco summoned Mr. Weber to his office and, together with Raimondo, summarily terminated Mr. Weber's employment.  Coco did not even attempt to justify or explain the termination, stating only that "you got the ball rolling by involving attorneys in this."  Coco also disingenuously suggested that Mr. Weber's termination was merely the outgrowth of a corporate "restructuring" process – an obviously pretextual explanation belied by the fact that Mr. Weber was the only employee at Atlantic Zeiser who was affected by this purported "restructuring."

47.     Although Mr. Weber's Deferred Compensation Agreement with the Company would have entitled him to receive in excess of $180,000 upon retiring at age 65, Coco presented him with a Separation Agreement and General Release that provided for payment of only $20,833, and was further conditioned on Mr. Weber's agreement to waive any and all legal claims against the Company.

48.     At the age of 60, after 30 years of exemplary and loyal service to Atlantic Zeiser, Mr. Weber was left without a job and with little hope of obtaining new, comparable employment. Unlawfully deprived of his income and retirement benefits, Mr. Weber's financial security and long-term planning were in ruins.  Although the quality of his work and his commitment to the Company had never been questioned, Mr. Weber faced the further anxiety, stress and humiliation of telling his family and friends that he had been terminated.

49.     Moreover, Mr. Weber's knowledge that he had been terminated because of his Jewish ancestry, religious observance, and age, as well as his complaints against such discrimination, caused him to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

50.     Having been raised by parents who were forever scarred by their memories of the Holocaust, Mr. Weber felt blessed to raise his own family in a country that prides itself as a champion of tolerance, pluralism and diversity.  As a result of Defendant's unlawful and discriminatory conduct, Mr. Weber has been shaken to his core by the realization that even in America, the distant specter of anti-Semitism can surface in unexpected acts of overt discrimination and retaliation, with devastating, life-altering results.

## FIRST CAUSE OF ACTION

### (Discrimination and Harassment in Violation of Section 1981)

51.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 50, inclusive, as if fully set forth herein.

52.     Defendant discriminated against Plaintiff on the basis of his Race (Jewish ancestry and/or ethnic characteristics) in violation of Section 1981 by denying him the same terms and conditions of employment available to employees who are not Jewish, including, but not limited to, denying him compensation (including salary and bonus), benefits and other perquisites equal to that of employees who are not Jewish, and by demoting him and terminating his employment because he is Jewish.

53.     Defendant has discriminated against Plaintiff in violation of Section 1981 by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because of his Race (Jewish ancestry and/or ethnic characteristics).

54.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

55.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

56.     Defendant's unlawful discriminatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## SECOND CAUSE OF ACTION

### (Retaliation in Violation of Section 1981)

57.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 56, inclusive, as if fully set forth herein.

58.     Defendant has violated Section 1981 by subjecting Plaintiff to retaliation for his protected complaints of and opposition to Defendant's discrimination on the basis of his Race (Jewish ancestry and/or ethnic characteristics), including, but not limited to, by demoting Plaintiff, transferring him from his office to a cubicle workspace, depriving him of resources that were provided to other employees and necessary for the performance of his job, ostracizing and isolating him from his colleagues, removing his supervisory authority over his four direct reports, ordering him to report to an inexperienced, junior employee, stripping him of an agreed upon deferred compensation benefit, and ultimately terminating his employment.

59.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

60.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

61.    Defendant's unlawful retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## THIRD CAUSE OF ACTION

### (Discrimination and Harassment in Violation of Title VII)

62.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 61, inclusive, as if fully set forth herein.

63.    Defendant has discriminated against Plaintiff in violation of Title VII by subjecting him to disparate treatment, harassment and a hostile work environment based upon his Religion and Race (Jewish ancestry and/or ethnic characteristics), including, but not limited to, by denying him compensation (including salary and bonus), benefits and other perquisites equal to that of employees who are not Jewish, and by demoting him and terminating his employment because he is Jewish.

64.    Defendant has discriminated against Plaintiff in violation of Title VII by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because of his Religion and Race (Jewish ancestry and/or ethnic characteristics).

65.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits.

66.   As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

67.   Defendant's unlawful discriminatory conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## FOURTH CAUSE OF ACTION

### (Retaliation in Violation of Title VII)

68.   Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 67, inclusive, as if fully set forth herein.

69.   Defendant has violated Title VII by subjecting Plaintiff to retaliation for his protected complaints of and opposition to Defendant's discrimination because of his Religion and Race (Jewish ancestry and//or ethnic characteristics), including but not limited to, by demoting Plaintiff, transferring him from his office to a cubicle workspace, depriving him of resources that were provided to other employees and necessary for the performance of his job, ostracizing and isolating him from his colleagues, removing his supervisory authority over his four direct reports, ordering him to report to an inexperienced, junior employee, stripping him of an agreed upon deferred compensation benefit, and ultimately terminating his employment.

70.   As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic

damages, including, but not limited to, loss of past and future income, compensation and benefits.

71.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

72.     Defendant's unlawful retaliatory conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## FIFTH CAUSE OF ACTION

### (Discrimination and Harassment in Violation of the ADEA)

73.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 72, inclusive, as if fully set forth herein.

74.     Defendant has discriminated against Plaintiff on the basis of his Age in violation of the ADEA by subjecting him to disparate treatment, harassment and a hostile work environment based upon his Age, including, but not limited to, by denying him compensation (including salary and bonus), benefits and other perquisites equal to that of younger employees, by demoting him and terminating his employment because of his Age, and by depriving Plaintiff of the deferred compensation and retirement benefits to which he was entitled.

75.     Defendant has discriminated against Plaintiff in violation of the ADEA by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile

work environment that included, among other things, severe and pervasive harassment of Plaintiff because of his Age.

76.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the ADEA, Plaintiff has suffered and continues to suffer, monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

77.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the ADEA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which he is entitled to an award of monetary damages and other relief.

78.     Defendant's unlawful discriminatory actions constitute a willful and wanton violation of the ADEA for which Plaintiff is entitled to an award of liquidated damages.

## **SIXTH CAUSE OF ACTION**

### **(Retaliation in Violation of the ADEA)**

79.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 78, inclusive, as if fully set forth herein.

80.     Defendant has violated the ADEA by subjecting Plaintiff to retaliation for his protected complaints of and opposition to Defendant's discrimination because of his Age, including but not limited to, by demoting Plaintiff, transferring him from his office to a cubicle workspace, depriving him of resources that were provided to other employees and necessary for the performance of his job, ostracizing and isolating him from his colleagues, removing his supervisory authority over his four direct reports, ordering him to report to an inexperienced,

junior employee, stripping him of an agreed upon deferred compensation benefit, and terminating his employment.

81.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the ADEA, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits.

82.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the ADEA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

83.     Defendant's unlawful and retaliatory actions constitute willful violations of ADEA for which Plaintiff is entitled to an award of liquidated damages.

## SEVENTH CAUSE OF ACTION

### (Violation of the New Jersey Law Against Discrimination)

84.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 83, inclusive, as if fully set forth herein.

85.     Defendant has discriminated against Plaintiff in violation of the New Jersey Law Against Discrimination by subjecting him to disparate treatment, harassment and a hostile work environment based upon his Age, Race (Jewish ancestry and/or ethnic characteristics) and Religion, including but not limited to, by denying to Plaintiff compensation (including salary and bonus), benefits and other perquisites equal to that of employees who are not Jewish and/or who are younger, and by demoting Plaintiff and terminating his employment because he is Jewish and/or based upon his Age.

86.     Defendant has discriminated against Plaintiff in violation of the New Jersey Law Against Discrimination by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because his Age, Race (Jewish ancestry and/or ethnic characteristics) and Religion.

87.     As a direct and proximate result of the Defendant's unlawful discriminatory conduct in violation of the New Jersey Law Against Discrimination, Plaintiff has suffered and continues to suffer financial and economic damages as well as severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

88.     Defendant's unlawful discriminatory conduct constitutes a willful and wanton violation of the New Jersey Law Against Discrimination, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## EIGHTH CAUSE OF ACTION

### (Retaliation in Violation of the New Jersey Law Against Discrimination)

89.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 88, inclusive, as if fully set forth herein.

90.     Defendant has violated the New Jersey Law Against Discrimination by subjecting Plaintiff to retaliation for his protected complaints of and opposition to Defendant's discrimination because of his Age, Race (Jewish ancestry and/or ethnic characteristics) and Religion, including but not limited to, by demoting Plaintiff, transferring him from his office to a

cubicle workspace, depriving him of resources that were provided to other employees and necessary for the performance of his job, ostracizing and isolating him from his colleagues, removing his supervisory authority over his four direct reports, ordering him to report to an inexperienced, junior employee, stripping him of an agreed upon deferred compensation benefit, and terminating his employment.

91.      As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the New Jersey Law Against Discrimination, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits.

92.      As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the New Jersey Law Against Discrimination, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

93.      Defendant's unlawful retaliatory conduct constitutes a willful and wanton violation of the New Jersey Law Against Discrimination, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## NINTH CAUSE OF ACTION

### (Discrimination and Harassment in Violation of NYSHRL)

94.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 93, inclusive, as if fully set forth herein.

95.     Defendant has discriminated against Plaintiff in violation of the New York State Human Rights Law by subjecting him to disparate treatment, harassment and a hostile work environment based upon his Age, Race (Jewish ancestry and/or ethnic characteristics) and Religion, including, but not limited to, by denying to Plaintiff compensation (including salary and bonus), benefits and other perquisites equal to that of employees who are not Jewish and/or who are younger, and by demoting Plaintiff and terminating his employment because he is Jewish and/or based upon his Age.

96.     Defendant has discriminated against Plaintiff in violation of the New York State Human Rights Law by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because of his Age, Race (Jewish ancestry and/or ethnic characteristics) and Religion.

97.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits.

98.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to

suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

## TENTH CAUSE OF ACTION

### (Retaliation in Violation of NYSHRL)

99.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 98, inclusive, as if fully set forth herein.

100.     Defendant has violated the New York State Human Rights Law by subjecting Plaintiff to retaliation for his protected complaints of and opposition to Defendant's discrimination because of his Age, Race (Jewish ancestry and/or ethnic characteristics) and Religion, including, but not limited to, by demoting Plaintiff, transferring him from his office to a cubicle workspace, depriving him of resources that were provided to other employees and necessary for the performance of his job, ostracizing and isolating him from his colleagues, removing his supervisory authority over his four direct reports, ordering him to report to an inexperienced, junior employee, stripping him of an agreed upon deferred compensation benefit, and terminating his employment.

101.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits.

102.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to

suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

## ELEVENTH CAUSE OF ACTION

### (Discrimination and Harassment in Violation of NYCHRL)

103.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 102, inclusive, as if fully set forth herein.

104.     Defendant has discriminated against Plaintiff in violation of the New York City Human Rights Law by subjecting him to disparate treatment, harassment and a hostile work environment based upon his Age, Race (Jewish ancestry and/or ethnic characteristics) and Religion, including, but not limited to, by denying to Plaintiff compensation (including salary and bonus), benefits and other perquisites equal to that of employees who are not Jewish and/or who are younger, and by demoting Plaintiff and terminating his employment because he is Jewish and/or based upon his Age.

105.     Defendant has discriminated against Plaintiff in violation of the New York City Human Rights Law by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because his Age, Race (Jewish ancestry and/or ethnic characteristics) and Religion.

106.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to

23

suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits.

107.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

108.    Defendant's unlawful discriminatory conduct constitutes a willful and wanton violation of the New York City Human Rights Law, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## TWELFTH CAUSE OF ACTION

### (Retaliation in Violation of NYCHRL)

109.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 108, inclusive, as if fully set forth herein.

110.    Defendant has violated the New York City Human Rights Law by subjecting Plaintiff to retaliation for his protected complaints of and opposition to Defendant's discrimination because of his Age, Race (Jewish ancestry and/or ethnic characteristics) and Religion, including, but not limited to, by demoting Plaintiff, transferring him from his office to a cubicle workspace, depriving him of resources that were provided to other employees and necessary for the performance of his job, ostracizing and isolating him from his colleagues, removing his supervisory authority over his four direct reports, ordering him to report to an

inexperienced, junior employee, stripping him of an agreed upon deferred compensation benefit, and terminating his employment.

111.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits.

112.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

113.    Defendant's unlawful retaliatory conduct constitutes a willful and wanton violation of the New York City Human Rights Law, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States, the State of New Jersey, the State of New York, and the City of New York;

B.    An injunction and order permanently restraining Defendant from engaging in such

unlawful conduct;

C.    An order directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discriminatory, retaliatory and/or otherwise unlawful treatment of him, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Plaintiff;

D.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

E.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

F.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputation and loss of career fulfillment;

G.    An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

H.    An award of punitive damages;

I.    An award of liquidated damages pursuant to the ADEA;

J.      An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

K.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: February 28, 2008

THOMPSON WIGDOR & GILLY LLP

By:     s/ Jackie Sacus
        Jackie Sacus
        Scott Browning Gilly (to be admitted *pro hac vice*)
        Ariel Y. Graff (to be admitted *pro hac vice*)

        350 Fifth Avenue, Suite 5720
        New York, NY  10118
        Telephone:  (212) 239-9292
        Facsimile:  (212) 239-9001

        COUNSEL FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing Amended Complaint was served via overnight mail delivery on this 28th day of February 2008, upon the following counsel for Defendants:

> James Murphy, Esq.
> Garrity, Graham, Murphy, Garofalo & Flinn, P.C.
> PO Box 4205
> One Lackawanna Plaza
> Montclair, New Jersey 07042-8205

<u>s/ Jackie Sacus</u>
Jackie Sacus