

## Thompson Wigdor & Gilly LLP ATTORNEYS AND COUNSELORS AT LAW

85 Fifth Avenue
New York, NY 10003
Tel 212.257.6800
Fax 212.257.6845
www.twglaw.com

**Scott B. Gilly**
sgilly@twglaw.com

<u>**BY ECF AND FACSIMILE**</u>

Honorable Michael A. Shipp
United States Magistrate Judge
for the District of New Jersey
Martin Luther King, Jr. - U.S. Courthouse
50 Walnut Street, Courtroom MLK 2C
Newark, New Jersey 07101

> **Re:** ***Joseph C. Weber v. Atlantic Zeiser/Orell Fussli***,
> <u>No. 08-CV-0977 (DRD) (MAS)</u>

Dear Judge Shipp:

As Your Honor is aware, we represent Plaintiff Joseph C. Weber ("Plaintiff" or "Mr. Weber") in the above-referenced action. We write to respectfully request the Court's intervention in connection with Defendant's refusal to produce Klaus Oesch – a resident of Switzerland and Chairman of the Board of Directors of Orell Fussli AG, the Swiss corporation of which Atlantic Zeiser is a wholly owned subsidiary and named Defendant herein – for his duly noticed deposition in the District of New Jersey pursuant to Fed. R. Civ. P. 30(b)(1). As set forth in greater detail below, Oesch holds the senior-most position of decision-making authority at Defendant, and was a key participant in the circumstances surrounding Defendant's termination of Mr. Weber's employment that are central to this litigation. In light of his position of authority at Defendant, Oesch is, at very least, a "managing agent" of Defendant, and is thus required to appear for his duly noticed deposition in this District.

> **I.    Oesch's Direct Involvement in the Circumstances of Mr. Weber's Termination**

At the time of Plaintiff's termination on August 24, 2006, Tom Coco (who has already been deposed in this case) held the position of President and CEO of Atlantic Zeiser. From approximately March 2005 through June 2005, Oesch assumed the position of Interim President and CEO of Atlantic Zeiser, Inc. in New Jersey. In or around June 2005, Oesch appointed Coco as President and CEO of Atlantic Zeiser's New Jersey operations. In connection with this promotion, Oesch created a written job description for Coco's new

Thompson Wigdor & Gilly LLP ATTORNEYS AND COUNSELORS AT LAW

Honorable Michael A. Shipp
September 10, 2009
Page 2

position, and Coco testified repeatedly during his deposition that Oesch is and has been his direct "supervisor" and that he "reports to Klaus Oesch."

Plaintiff testified at his deposition that he first complained to Coco, as well as Michael Raimondo, the Controller and HR Manager of Atlantic Zeiser, about religious and age-based discrimination committed against him in the workplace in early June 2006.  Mr. Weber further testified that, as alleged at paragraph 35 of the Complaint:

> When Mr. Weber complained to Coco about discrimination and harassment by Stoerk and Masser, Coco advised him that Masser "had [German-based President and CEO] Oesch's ear" and that he was powerless to take any action against Stoerk or Masser in response to Mr. Weber's complaints because the discrimination and harassment were being directed by Bruno Masser.

Significantly, the first written reference to the purported "restructuring" at Atlantic Zeiser that precipitated Plaintiff's demotion in June 2006 is an email from Coco to Oesch dated June 13, 2006, several days after Plaintiff's protected complaints to Coco about discrimination and harassment being committed against him in the workplace by Masser and Stoerk, who are also German nationals.[1]

Moreover, the minutes of a July 18, 2006 meeting between Oesch, Coco, Raimondo, Stoerk and others – which Raimondo testified had been drafted by Oesch – include, as the first topic of discussion, an apparent admission of liability with respect to Plaintiff's claims of unlawful retaliation in this case.  Specifically, the statements attributed to Oesch acknowledge that Atlantic Zeiser terminated Mr. Weber's employment in response to Mr. Weber's allegations of unlawful discrimination and harassment in the workplace, as well as his decision to retain an attorney when Coco informed him that only Oesch had the authority to resolve those complaints:

> After the reorganization was announced end of June 2006, Jo [sic] Weber preferred not to come to work for reasons which are little plausible.  Instead he had a lawyer sending a letter full of unjust accusations and ridiculous claims (age and religion discrimination, financial and title requests which may go back to his employment with Atlantic Force, but have neither been renewed nor announced to Atlantic Zeiser).  Tom Coco had several talks before the reorganisation [sic] with Jo [sic] Webber [sic] and indicated his dissatisfaction with Jo [sic] Weber's performance.  Jo [sic] Weber's behaviour makes it very doubtful whether he is anymore interested to work for AZ Inc (and vice versa).[2]

---

[1]    A copy of Coco's July 13, 2006 email to Oesch (bates no. AZ 5) is attached hereto as <u>Exhibit 1</u>.

[2]    A copy of the quoted July 18, 2006 meeting minutes (bates no. AZ 7) is attached hereto as <u>Exhibit 2</u>.

Thompson Wigdor & Gilly LLP ATTORNEYS AND COUNSELORS AT LAW

Honorable Michael A. Shipp
September 10, 2009
Page 3

In light of Oesch's direct role in the events that culminated in Plaintiff's termination, Plaintiff's opportunity to take Oesch's deposition is indispensible to his prosecution of this case.

## II. Oesch is a "Managing Agent" of Atlantic Zeiser/Orell Fussli and Must Appear for His Duly Noticed Deposition Under Rule 30(b)(1)

A party seeking to depose a corporation "may name a specific officer, director or managing agent to give deposition testimony on behalf of a party corporation pursuant to Fed. R. Civ. P. 30(b)(1)." *Triple Crown Am. v. Biosynth AG*, No. 96-7476, 1998 U.S. Dist. LEXIS 6117, at *4 (E.D. Pa. Apr. 29, 1998). Although the identification of corporate officers and directors is a simple fact question, "[t]he identification of a managing agent is a fact-sensitive question that depends on several factors." *Id.* at *6 (citations omitted). "These essentially involve the extent of the individual's decisionmaking discretion and unsupervised authority, the degree to which his interests converge with those of the corporation and his general responsibilities, particularly with regard to the matters at issue in the litigation." *Id.* at *6-7 (citations omitted); *accord Shawnee Holdings, Inc. v. Travelers Indem. Co. of Am.*, No. 3:01-cv-2071, 2004 U.S. Dist. LEXIS 1410, at *5 (M.D. Pa. Feb. 4, 2004). "At the discovery stage, doubts about an individual's status as a 'managing agent' are resolved in favor of the examining party." *Triple Crown Am.*, at *7 (citations omitted).

Oesch clearly qualifies as Atlantic Zeiser's "managing agent" under these standards. As set forth above, Oesch exercises unbridled "decisionmaking discretion and unsupervised authority" over Atlantic Zeiser. His interests are inseparable from those of the Company and he had ultimate responsibility – as well as direct personal involvement – in the circumstances that culminated in its abrupt termination of Plaintiff's employment, after more than 30 years of unblemished service. Finally, even if Oesch's status as a "managing agent" was subject to dispute, any such doubts must be resolved in favor of Plaintiff, the party seeking Oesch's deposition.

## III. Defendant Must Produce Oesch for His Deposition in New Jersey

Federal courts have substantial discretion to specify the time and place of any depositions, and have not hesitated to compel corporate defendants to produce officials who are foreign nationals for depositions in the United States, which "has an 'overriding interest' in promoting the prompt and efficient resolution of litigation in its courts." *Triple Crown Am. v. Biosynth AG*, No. 96-7476, 1998 U.S. Dist. LEXIS 6117, at *9 (requiring Swiss corporate defendant to appear for deposition in forum district) (citing *In re Honda American Motor Co., Inc. Dealership Relations Litig.*, 168 F.R.D. 535, 541-43 (D. Md. 1996) (denying motion to quash deposition notices and requiring agents of Japanese corporate defendant to be deposed in Maryland); *M&C Corporation v. Erwin Behr GMBH & Co.*, 165 F.R.D. 65, 68 (E.D. Mich. 1996) (denying protective order and requiring German corporate defendant's agents

Thompson Wigdor & Gilly LLP ATTORNEYS AND COUNSELORS AT LAW

Honorable Michael A. Shipp
September 10, 2009
Page 4

to appear for depositions in Detroit); *R.F. Barron Corp. v. Nuclear Fields (Australia) Pty., Ltd.*,
No. 91 C 7610, 1992 U.S. Dist. LEXIS 13067, at *2 (N.D. Ill. Aug. 28, 1992) (requiring
depositions of Dutch and Australian defendants in Chicago); *Roberts v. Heim*, 130 F.R.D.
430, 439-40 (N.D. Cal. 1990) (compelling appearance of Swiss defendant for deposition in
San Francisco); *Work v. Bier*, 106 F.R.D. 45, 56 (D.D.C. 1985) (requiring German corporate
defendant and its agents to appear for depositions in Washington, D.C.)); *Custom Form Mfg.,
Inc. v. Omron Corp.*, 196 F.R.D. 333, 337 (N.D. Ind. 2000) (compelling appearance of agents
of Japanese corporate defendant in the United States).

Moreover, we understand that Oesch regularly travels between Europe and the United
States, and the fact that he resides in a foreign country does not excuse Defendant's failure
to comply with its discovery obligations in this case. Indeed, Defendant's refusal to even
disclose information concerning Oesch's scheduled visits to this District is indefensible.

For all the foregoing reasons, we respectfully request that the Court: (i) order Defendant to
produce Oesch for his duly noticed deposition in the District of New Jersey; and (ii) impose
an appropriate sanction against Defendant, including an award of reasonable costs and
attorneys' fees incurred by Plaintiff as a result Oesch's unexcused failure to appear thus far,
necessitating this request for Court intervention.

Respectfully submitted,

Scott B. Gilly

Attachments

cc:    Ari Graff, Esq.
       James Scott Murphy, Esq.
       Peter Cipparulo, III, Esq.