**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
---------------------------------------------------------------- X
JOSEPH C. WEBER,                                :
                                                :
                    Plaintiff,    :
                                                :
      v.                                        :   No.: 08-CV-00977 (DRD/MAS)
                                                :
ATLANTIC ZEISER/ORELL FUSSLI,                   :
                                                :
                    Defendant.    :
---------------------------------------------------------------- X


**MEMORANDUM OF LAW**
**IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY**


                                                THOMPSON WIGDOR & GILLY LLP

                                                Scott B. Gilly
                                                Ariel Y. Graff
                                                85 Fifth Avenue
                                                New York, NY 10003
                                                Telephone: (212) 257-6800
                                                Facsimile: (212) 257-6845
                                                agraff@twglaw.com

                                                *COUNSEL FOR PLAINTIFF*

Plaintiff Joseph C. Weber ("Plaintiff" or "Mr. Weber") respectfully submits this memorandum of law in support of his motion pursuant to Fed. R. Civ. P. 37(a): (i) to compel Klaus Oesch ("Oesch") to appear for his duly noticed deposition in the District of New Jersey in accordance with Fed. R. Civ. P. 30(b)(1); and (ii) to compel the production of Defendant Atlantic Zeiser/Orell Fussli's ("Defendant" or "Atlantic Zeiser" or the "Company") financial reports for the years 2004 through 2007.

**STATEMENT OF FACTS**

After 30 years of successful employment at Defendant, and having attained the position of Vice President/Director of Customer Service, Mr. Weber began being subjected to unlawful discrimination and harassment in the workplace on the basis of his age and/or religion after Oesch purchased Atlantic Zeiser's U.S. operations in New Jersey and began serving as the Company's President on March 31, 2005. (*See* Affirmation of Ariel Y. Graff (hereinafter "Aff.") at Ex. 3).

In early June 2006, Mr. Weber complained to Tom Coco, the Company's Vice-President, and Mike Raimondo, its Controller and HR Director, about the discriminatory and harassing conduct that he had been subjected to. (Compl. ¶ 34). In response, Coco told Mr. Weber that Oesch was the only individual at the Company who could resolve his complaints of discrimination and harassment. (*Id.* ¶ 35). Moreover, on or about June 26, 2006, rather than addressing Mr. Weber's legitimate complaints of discrimination, Coco himself continued these unlawful practices by instructing Mr. Weber to vacate the office he had occupied for years and transfer instead to a small, cubicle workspace. (*Id.* ¶ 36). Coco also stripped Mr. Weber of his supervisory authority over his four direct reports and instead informed Mr. Weber that he would henceforth report to a junior employee with less

than two years of experience at the Company and no prior experience in customer service. (*Id.* ¶ 37).

On or about July 7, 2006, Mr. Weber's attorney sent a letter to Coco questioning the Company's apparent mistreatment of Mr. Weber and asserting that the Company may have exposed itself to potential claims of discrimination, harassment and hostile work environment on the basis of Mr. Weber's age, ancestry and religion. (*Id.* ¶ 37). Thereafter, on July 18, 2006, Oesch resigned his position as President of Atlantic Zeiser in New Jersey, and appointed Coco to serve as the Company's President in his stead. (Aff., Ex. 3). However, Oesch retained his status as Coco's immediate supervisor in his capacity as President and CEO of Orell Fussli AG, of which Atlantic Zeiser is a wholly owned subsidiary. (*Id.*, Ex. 1).

The minutes of a meeting later that same day between Oesch, Coco, Raimondo, and others – which Raimondo testified had been drafted by Oesch – include, as item number 1, the following statements by Oesch:

> After the reorganization was announced end of June 2006, Jo [sic] Weber preferred not to come to work for reasons which are little plausible. Instead he had a lawyer sending a letter full of unjust accusations and ridiculous claims (age and religion discrimination, financial and title requests which may go back to his employment with Atlantic Force, but have neither been renewed nor announced to Atlantic Zeiser). Tom Coco had several talks before the reorganisation [sic] with Jo [sic] Webber [sic] and indicated his dissatisfaction with Jo [sic] Weber's performance. Jo [sic] Weber's behaviour makes it very doubtful whether he is anymore interested to work for AZ Inc (and vice versa).

(*Id.* Ex. 2). Consistent with Oesch's assertion "that Jo [sic] Weber's behaviour makes it very doubtful whether [AZ Inc] is anymore interested [in his continuing to] work," Coco summoned Mr. Weber into his office on August 24, 2006 and summarily terminated his employment, thereby giving rise to the instant lawsuit.

2

Although Plaintiff duly served Defendant with notice for Oesch's deposition pursuant to Fed. R. Civ. P. 30(b)(1), Defendant has refused to produce Oesch for his deposition. Notably, Defendant does not dispute that Oesch was the President of Atlantic Zeiser, Inc. in New Jersey in June 2006, when Mr. Weber alleges that he complained to Coco and Raimondo about discrimination and harassment before being demoted later that month. Nor does Defendant dispute that Oesch abruptly resigned his position at Atlantic Zeiser in New Jersey on July 18, 2006, approximately one week after receiving the letter from Mr. Weber's attorney dated July 7, 2006. Defendant also does not dispute that the minutes of the July 18, 2006 meeting that Oesch drafted memorialize his characterization of Mr. Weber's claims as "ridiculous" and his suggestion that Mr. Weber's decision to retain counsel would adversely impact his future at the Company. Finally, Defendant concedes that Oesch continues to exercise supervisory authority over Coco and Atlantic Zeiser in New Jersey in his capacity as President and CEO of Orell Fussli AG. (*Id*. Ex. 1).

Instead, the sole basis for Defendant's failure and refusal to produce Oesch is its claim that Oesch is not an "employee" of Atlantic Zeiser, Inc. in New Jersey. (*Id*. Ex. 4.). As set forth below, this purported justification for failing to produce Oesch for his duly noticed deposition is baseless, and Plaintiff's application to compel Oesch's appearance should be granted in its entirety.

### ARGUMENT

I.   **Oesch's Deposition is Within the Scope of Permissible Discovery and Indispensable to Plaintiff's Prosecution of his Claims in this Litigation**

In light of Oesch's obvious and undisputed direct involvement in the events that gave rise to Plaintiff's termination, his testimony is plainly "relevant" to Plaintiff's claims and within the scope of discovery that Plaintiff is entitled to obtain in this litigation. *See*

3

*generally* Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."); *Tele-Radio Sys. Ltd. v. DeForest Electronics, Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981) ("Courts have construed this rule liberally, creating a broad vista for discovery."); Fed. R. Civ. P. 26(b)(1) ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence").

Moreover, although Plaintiff has already taken Coco's deposition, Defendant cannot rely on this fact to justify its inexplicable refusal to produce Oesch for his deposition. Rather, Plaintiff is entitled the opportunity to question *all* persons with likely information and/or knowledge about Defendant's stated reasons for the termination of his employment to fully explore any inconsistencies or misstatements that would permit Plaintiff to prove that such statements are merely pretextual.  *See Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (Plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons.") (citations and internal quotations omitted).  Defendant cannot unilaterally restrict Plaintiff's access to relevant information on the flimsy grounds offered here. Oesch's deposition is therefore well within the scope of discovery that Plaintiff requires and is entitled to obtain in this litigation.

    II.    **Defendant Is Required to Produce Oesch for His Duly Noticed Deposition Pursuant to Fed. R. Civ. P. 30(b)(1)**

A party seeking to depose a corporation "may name a specific officer, director or managing agent to give deposition testimony on behalf of a party corporation pursuant to

Fed. R. Civ. P. 30(b)(1)." *Triple Crown Am. v. Biosynth AG*, No. 96-7476, 1998 U.S. Dist. LEXIS 6117, at *4 (E.D. Pa. Apr. 29, 1998). Although the identification of corporate officers and directors is a simple fact question, "[t]he identification of a managing agent is a fact-sensitive question that depends on several factors." *Id*. at *6 (citations omitted). "These essentially involve the extent of the individual's decision-making discretion and unsupervised authority, the degree to which his interests converge with those of the corporation and his general responsibilities, particularly with regard to the matters at issue in the litigation." *Id.* at *6-7 (citations omitted); *accord Shawnee Holdings, Inc. v. Travelers Indem. Co. of Am*., No. 3:01-cv-2071, 2004 U.S. Dist. LEXIS 1410, at *5 (M.D. Pa. Feb. 4, 2004). "At the discovery stage, doubts about an individual's status as a 'managing agent' are resolved in favor of the examining party." *Triple Crown Am*., at *7 (citations omitted).

Oesch clearly qualifies as Atlantic Zeiser's "managing agent" under these standards. As set forth above, Oesch exercises unbridled and indisputable "decision-making discretion and unsupervised authority" over Atlantic Zeiser. He currently supervises Atlantic Zeiser's President and is likewise the President of the Company's sole parent corporation. His interests are inseparable from those of the Company and he had ultimate responsibility – as well as direct personal involvement – in the circumstances that culminated in its abrupt termination of Plaintiff's employment, after more than 30 years of unblemished service. Indeed, it is difficult to imagine a corporate officer more uniquely qualified to testify on behalf of the Company than Oesch. To allow Oesch to escape his obligation to give testimony in this case simply because he is notionally not an "employee" of Atlantic Zeiser would amount to a gross distortion of the applicable discovery rules and this Court's authority. Finally, even if Oesch's status as a "managing agent" was subject to dispute,

5

which it is not, the law requires that any such doubts must be resolved in favor of Plaintiff, the party seeking Oesch's deposition.

In addition, the integrated operations of Atlantic Zeiser and Orell Fussli demonstrate that the two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, they are in fact a "single employer." *See National Labor Relations Board v. Browning-Ferris Industries of Pennsylvania*, 691 F.2d 1117(3d Cir. 1982) ("A 'single employer' relationship exists where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a 'single employer.'") (citations omitted); *Santichen v. Gibson*, 2008 U.S. Dist. LEXIS 25528, at *19-20 (W.D. Pa. Mar. 31, 2008). As such, Defendant's assertion that Oesch cannot be compelled to appear for his deposition pursuant to Fed. R. Civ. P. 30(b)(1) because he is purportedly not an "employee" of Defendant is simply untenable.

As a result of Oesch's status as a "managing agent" for Defendant and/or the President and CEO of the "single employer" of Defendant's employees, Defendant cannot avoid its obligation to produce Oesch for his duly noticed deposition pursuant to Fed. R. Civ. P. 30(b)(1).

### III. Defendant Must Produce Oesch for His Deposition in New Jersey

Although Defendant has not disclosed contact information for Oesch, and has refused to provide information regarding Oesch's anticipated presence in this District as requested by Plaintiff, Oesch is apparently a foreign national and resident of either Germany and/or Switzerland. Nevertheless, even if Oesch is not physically present in New Jersey or any other judicial district in the United States (which Defendant has failed to establish), federal courts have substantial discretion to specify the time and place of any

6

depositions, and have not hesitated to compel corporate defendants to produce officials who are foreign nationals for depositions in the United States, which "has an 'overriding interest' in promoting the prompt and efficient resolution of litigation in its courts." *Triple Crown Am. v. Biosynth AG*, No. 96-7476, 1998 U.S. Dist. LEXIS 6117, at *9 (E.D. Pa. Apr. 29, 1998) (requiring Swiss corporate defendant to appear for deposition in forum district) (citing *In re Honda American Motor Co., Inc. Dealership Relations Litig.*, 168 F.R.D. 535, 541-43 (D. Md. 1996) (denying motion to quash deposition notices and requiring agents of Japanese corporate defendant to be deposed in Maryland); *M&C Corporation v. Erwin Behr GMBH & Co.*, 165 F.R.D. 65, 68 (E.D. Mich. 1996) (denying protective order and requiring German corporate defendant's agents to appear for depositions in Detroit); *R.F. Barron Corp. v. Nuclear Fields (Australia) Pty., Ltd.*, No. 91 C 7610, 1992 U.S. Dist. LEXIS 13067, at *2 (N.D. Ill. Aug. 28, 1992) (requiring depositions of Dutch and Australian defendants in Chicago); *Roberts v. Heim*, 130 F.R.D. 430, 439-40 (N.D. Cal. 1990) (compelling appearance of Swiss defendant for deposition in San Francisco); *Work v. Bier*, 106 F.R.D. 45, 56 (D.D.C. 1985) (requiring German corporate defendant and its agents to appear for depositions in Washington, D.C.)); *Custom Form Mfg., Inc. v. Omron Corp.*, 196 F.R.D. 333, 337 (N.D. Ind. 2000) (compelling appearance of agents of Japanese corporate defendant in the United States).

Defendant is undoubtedly subject to this Court's jurisdiction, and is thus required to produce Oesch – its managing agent and/or the President and CEO of the integrated "single employer" – for his deposition in this matter. Accordingly, Plaintiff respectfully requests that the Court grant his motion to compel Klaus Oesch to appear for his duly noticed deposition pursuant to Fed. R. Civ. P. 30(b)(1) in the District of New Jersey in its entirety.

7

## IV.     **Defendant's Refusal to Produce its Financial Reports is Contrary to Rule 34**

Defendant claims that Plaintiff was demoted due to a purportedly neutral and non-retaliatory reorganization of its business that resulted in the elimination of Plaintiff's position as Vice-President and Director of Customer Service at the Company.  To demonstrate that this asserted justification for Plaintiff's demotion is merely a pretext for unlawful discrimination and/or retaliation against Plaintiff, Plaintiff requires discovery concerning Defendant's financial condition in the years immediately prior and subsequent to the purported restructuring and Plaintiff's termination (*viz.* 2004-2007).

Defendant's controller, Michael Raimondo, testified at his deposition that he compiles and transmits an annual "financial package" regarding Atlantic Zeiser's operations in New Jersey to the Company's offices in Germany, where it is consolidated with the "financial packages" of other subsidiaries "into one large package" that is ultimately published as the annual report for Atlantic Zeiser internationally.  (Aff., Ex. 5).  However, the published annual financial reports provide consolidated financial information for Atlantic Zeiser's international subsidiaries, without providing segment reports specific to Atlantic Zeiser's operations in the United States.   (*Id.*).

Although Plaintiff requested production of the "financial package" for Atlantic Zeiser's New Jersey operations that Raimondo described during his deposition, Defendant has refused to produce those materials based solely on an assertion of "confidentiality."  However, any reasonable concern for the confidentiality of Defendant's financial records has been obviated by the parties' confidentiality stipulation that governs the use and

8

treatment of materials produced in discovery.[1]   Moreover, "confidentiality" is not a valid basis for a party's refusal to comply with its discovery obligations under Fed. R. Civ. P. 34. *See*, *e.g.*, *Danilo v. HealthHelp, Inc.*, No. 01-CV-5625, 2002 U.S. Dist. LEXIS 14120, at *12 (E.D. Pa. July 2, 2002) (compelling production of financial statements of corporation despite Defendant's claim that statements would reveal confidential, proprietary information). Accordingly, Plaintiff respectfully requests that the Court compel Defendant to produce its "financial packages" for the years 2004 through 2007, subject to the provisions of the confidentiality stipulation that is already in place.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion in its entirety and compel Defendant to produce Klaus Oesch for his duly noticed deposition in the District of New Jersey, and to produce its financial reports for the years 2004 through 2007.

Dated: September 25, 2009
New York, New York

Respectfully submitted,

THOMPSON WIGDOR & GILLY LLP

By:   /s/
Scott B. Gilly
Ariel Y. Graff

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845

*COUNSEL FOR PLAINTIFF JOSEPH WEBER*

---

[1]   Defendant has at all times inexplicably declined to submit the parties' confidentiality stipulation and proposed order to be entered by the Court.

9