# GARRITY, GRAHAM, MURPHY, GAROFALO & FLINN

A PROFESSIONAL CORPORATION
COUNSELLORS AT LAW

Peter Cipparulo, III, Esq.
*NJ Bar*
Of Counsel

Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

Phone Ext. 207
E-Mail: pc@garritygraham.com

ONE LACKAWANNA PLAZA, PO BOX 4205
MONTCLAIR, NJ  07042-8205
(973) 509-7500
FAX (973) 509-0414

New York Office

PMB 46015
140 BROADWAY
46TH FLOOR
NEW YORK, NY  10005
(212) 858-7716

November 12, 2009

**VIA ELECTRONICALLY FILE & FAX**

Honorable Michael A. Shipp, Magistrate
United States District Court
District of New Jersey
M.L. King, Jr. Federal Building & Courthouse
50 Walnut Street
Newark, NJ   07102

    Re:    **Weber, Joseph v. Atlantic Zeiser, Inc.**
                **Civil Action No.**    :    **08-CV-00977 (DRD/MAS)**
                **Our File No.**        :    **512.21533/JSM**

Dear Judge Shipp:

    Please accept this letter in response to plaintiff's letter of November 4, 2009 regarding seeking the production of privileged and redacted material. Plaintiff's attempt to obtain privileged e-mails is just another example of its continued protracted litigation tactics. Throughout this litigation, defendant has produced six witnesses for deposition and over 6,000 pages of written documents regarding this single employee alleged discrimination case. Moreover, plaintiff has another application pending before the Court seeking to have Atlantic Zeiser produce the CEO of the senior parent corporation of Atlantic Zeiser. While I can represent to the Court that the there are no enclosed "smoking guns" in any of the e-mails, the sanctity of the attorney client privilege necessitates defendant opposing the plaintiff's application. The documents in dispute are summarized in my letter of November

GARRITY, GRAHAM, MURPHY, GAROFALO & FLINN

November 12, 2009
Page 2

2, 2009 attached as Exhibit 4 to the plaintiff's brief. As indicated, the e-mail identified in privilege log Number 2 is an e-mail from Tom Coco to an attorney at Atlantic Zeiser, GMBH, Thomas Obitz. This e-mail documents conversations between Tom Coco, the CEO of Atlantic Zeiser and Proskaur Rose, LLP the law firm that was representing Atlantic Zeiser, Inc. in August 2006 for Mr. Weber's claim.

This issue was addressed in Cooper Health System v. Virtua Health, Inc. - - F.R.D. - - 2009 WL2407413 (D.N.J. 2009 copy attached). In that decision a party sought e-mail messages between defendant advertising agency for defendant local hospital and non-party contractor that performed research for the advertising agency regarding litigation in State Court. The Court found that those e-mails were not privileged. Id. at 4. Importantly, the Court noted that none of the documents were authored by or sent to an attorney. Id. Furthermore, the party had not established that the e-mails were necessary to obtain legal advice. In this matter, the e-mail in question was sent by the CEO of Atlantic Zeiser, Inc., Tom Coco to an attorney of Atlantic Zeiser GMBH, a sister company of Atlantic Zeiser. The e-mail was made in response to a discussion Mr. Coco had with an attorney of Proskaur Rose law firm. The e-mail specifically is regarding Joe Weber's claim, Based on the above case law since the e-mail was sent to an attorney regarding legal communications from the attorney representing Atlantic Zeiser, defendant has demonstrated that the attorney client privilege applies. See also Fisher v. United States, 425 U.S. 391, 403 96 S.Ct. 1569, 48 L.Ed. 2d 39 (1976).

Regarding the e-mail outlined in the privileged documents Number 3 and 4, documents an exchange betweenTom Coco and Mike Raimondo after conversations with representative of Proskaur Rose. As indicated, Mr. Coco is the CEO of Atlantic Zeiser, Mr. Raimondo is the CFO. Certainly two officers of a corporation are allowed to exchange e-mails regarding the advice and conversations given by their attorney. See Fischer, supra.

Finally, the questions regarding the e-mails identified in privilege log Numbers 9 and 10 have been produced except for the information regarding the salary information as to Matthis Dressel and Alec Rabinovich. That information has been redacted. While defendant recognizes that the Court permits broad discovery, the plaintiff still has to demonstrate the production of documents is relevant or will lead to the admission of relevant information. See Oil, Chemical and Atomic Workers Local Union v. N.L.R.B. 711 F.2d. 348, 360 (D.C. Cir. 1983). Here, one of Mr. Weber's many allegations, is that was denied comparable salary and other benefits because he is Jewish. (See Paragraph 63 of plaintiff's Complaint). The salary of Mr. Dressel and Mr. Rabinovich's are not relevant to any of the allegations alleged by Mr. Weber. Mr. Weber was employed in the Customer Service department at Atlantic Zeiser until June 2006. Mr. Weber also claims that he was an officer of the company and that his title was Vice President of Sales. Atlantic Zeiser denies that Mr. Weber was ever an officer of the Company. In any event, it is hard to see how the salary of Mr. Dressel a non-employee of Atlantic Zeiser, Inc. and non-manager/director is relevant in any sense to this litigation or could lead to admissible evidence. Similarly, Mr. Rabinovich

GARRITY, GRAHAM, MURPHY, GAROFALO & FLINN

November 12, 2009
Page 4

is a non-manager/director and reported to Mr. Weber. The plaintiff has never ever proffered to why these salaries could possibly be relevant.

Similarly, the spreadsheet forwarded by Kyle Severson was something created after Mr. Weber left the company. Mr. Severson created a spreadsheet all employees that reported to him that calculated their vacation days, sick days, salary and bonuses. All those employees were non-managerial/director employees. Their salaries is something just that it does not concern Mr. Weber and it is respectfully requested that deny the plaintiff's application in its entirety.

Respectfully submitted,

PETER CIPPARULO, III

PC:dt
Enclosure
cc:   Ari Graff, Esq./Thompson, Wigdor & Gilly, LLP

M:\Data\CLI\512\215\33\Court\Magistrate Shipp 09.wpd

Westlaw.

Page 1

--- F.R.D. ----, 2009 WL 2407413 (D.N.J.)
(Cite as: 2009 WL 2407413 (D.N.J.))

Only the Westlaw citation is currently available.

United States District Court, D. New Jersey.
The COOPER HEALTH SYSTEM, Plaintiff,
v.
VIRTUA HEALTH, INC., Defendant.
Civil No. 09-735(RMB/JS).

Aug. 4, 2009.

**Background:** Health care system brought action against local hospital, relating to parties' respective advertisements. The New Jersey Superior Court, Camden County, Chancery Division, Mary E. Colalillo, J., temporarily enjoined hospital from engaging in the publication and distribution of certain advertising. Action was removed. Nonparty advertising agency for hospital and nonparty contractor that performed research for advertising agency filed motion for protective order relating to production of documents, and thereafter, health care system amended its complaint to add the advertising agency as a defendant.

**Holding:** The United States District Court, Joel Schneider, United States Magistrate Judge, held that attorney work-product protection was not waived through disclosure.

Motion granted in part and denied in part.

West Headnotes

[1] **Removal of Cases** 334 ⚖➡114

334 Removal of Cases
   334VIII Proceedings in Case After Removal
      334k114 k. Effect of Proceedings in State Court Before Removal. Most Cited Cases

**Removal of Cases** 334 ⚖➡115

334 Removal of Cases
   334VIII Proceedings in Case After Removal
      334k115 k. Forms and Rules of Procedure in General. Most Cited Cases
After a state court action is removed to federal court, the case will then proceed as if it had been brought in the federal court originally, but orders that were previously entered in the state case remain in full force and effect until dissolved or modified by the federal court. 28 U.S.C.A. § 1450.

[2] **Removal of Cases** 334 ⚖➡114

334 Removal of Cases
   334VIII Proceedings in Case After Removal
      334k114 k. Effect of Proceedings in State Court Before Removal. Most Cited Cases
Orders or judgments entered by the state court prior to removal should be treated as orders or judgments entered by the federal court, and thus, the federal court has the power to enforce, continue, or modify orders of the state court as it would any such order it might itself have entered. 28 U.S.C.A. § 1450.

[3] **Federal Civil Procedure** 170A ⚖➡928

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(I) Motions in General
         170Ak928 k. Determination. Most Cited Cases
Although a district court has the power to revisit prior decisions, it should hesitate to do so absent a change in circumstances, such as when new evidence is available.

[4] **Federal Courts** 170B ⚖➡433

170B Federal Courts
   170BVI State Laws as Rules of Decision
      170BVI(C) Application to Particular Matters
         170Bk433 k. Other Particular Matters. Most Cited Cases

**Removal of Cases** 334 ⚖➡114

334 Removal of Cases
   334VIII Proceedings in Case After Removal

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2009 WL 2407413 (D.N.J.)
(Cite as: 2009 WL 2407413 (D.N.J.))

Page 2

334k114 k. Effect of Proceedings in State Court Before Removal. Most Cited Cases
After removal, district court would reexamine state court's discovery orders in health care system's action against local hospital, relating to parties' respective advertisements; after removal the case was subject to federal rather than state discovery rules, and in the six months since the case had been filed in state court the claims and defenses had become more focused than when state court had been facing an imminent injunction hearing.

[5] Witnesses 410 16

410 Witnesses
　　410I In General
　　　　410k16 k. Subpoena Duces Tecum. Most Cited Cases
Information regarding amount of monthly agency fee that defendant local hospital paid to defendant advertising agency, negotiated rates that agency charged hospital for advertising and marketing work performed by vendors and media outlets, and agency's strategic recommendations to hospital regarding future advertising, was not relevant to health care system's action against hospital and advertising agency relating to health care system's and hospital's respective advertisements, and thus, such information was not discoverable from agency through subpoena. Fed.Rules Civ.Proc.Rule 26, 28 U.S.C.A.

[6] Estoppel 156 68(2)

156 Estoppel
　　156III Equitable Estoppel
　　　　156III(B) Grounds of Estoppel
　　　　　　156k68 Claim or Position in Judicial Proceedings
　　　　　　　　156k68(2) k. Claim Inconsistent with Previous Claim or Position in General. Most Cited Cases
On motion by advertising agency, which performed work for defendant local hospital, for protective order relating to information redacted from documents produced by advertising agency pursuant to plaintiff health care system's subpoena for production of documents in action relating to plaintiff's and hospital's respective advertisements, plaintiff was judicially estopped from asserting that advertising agency, which had not been a party when it had filed the motion for protective order, lacked standing to object on relevancy grounds to plaintiff's subpoena for documents, where plaintiff earlier had taken a contrary position in the case when it had moved to quash hospital's subpoenas directed to non-parties.

[7] Estoppel 156 68(2)

156 Estoppel
　　156III Equitable Estoppel
　　　　156III(B) Grounds of Estoppel
　　　　　　156k68 Claim or Position in Judicial Proceedings
　　　　　　　　156k68(2) k. Claim Inconsistent with Previous Claim or Position in General. Most Cited Cases
The doctrine of judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.

[8] Estoppel 156 68(1)

156 Estoppel
　　156III Equitable Estoppel
　　　　156III(B) Grounds of Estoppel
　　　　　　156k68 Claim or Position in Judicial Proceedings
　　　　　　　　156k68(1) k. In General. Most Cited Cases

Estoppel 156 68(2)

156 Estoppel
　　156III Equitable Estoppel
　　　　156III(B) Grounds of Estoppel
　　　　　　156k68 Claim or Position in Judicial Proceedings
　　　　　　　　156k68(2) k. Claim Inconsistent with Previous Claim or Position in General. Most Cited

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2009 WL 2407413 (D.N.J.)
(Cite as: 2009 WL 2407413 (D.N.J.))

Page 3

Cases
Invocation of the doctrine of judicial estoppel is within a court's discretion.

**[9] Privileged Communications and Confidentiality 311H ⇌122**

311H Privileged Communications and Confidentiality
    311HIII Attorney-Client Privilege
        311Hk120 Parties and Interests Represented by Attorney
            311Hk122 k. Common Interest Doctrine; Joint Clients or Joint Defense. Most Cited Cases
The community of interest privilege allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others.

**[10] Privileged Communications and Confidentiality 311H ⇌122**

311H Privileged Communications and Confidentiality
    311HIII Attorney-Client Privilege
        311Hk120 Parties and Interests Represented by Attorney
            311Hk122 k. Common Interest Doctrine; Joint Clients or Joint Defense. Most Cited Cases
The community of interest privilege, which allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others, is applicable only if an underlying privilege has been established.

**[11] Privileged Communications and Confidentiality 311H ⇌141**

311H Privileged Communications and Confidentiality
    311HIII Attorney-Client Privilege
        311Hk135 Mode or Form of Communications
            311Hk141 k. E-Mail and Electronic Communication. Most Cited Cases
E-mail messages between defendant advertising agency for defendant local hospital and nonparty contractor that performed research for advertising agency, regarding litigation in state court before hospital removed the action to federal court and before advertising agency was added as a defendant, and regarding plaintiff health care system's subpoena to advertising agency for production of documents, which subpoena had been served before advertising agency was added as a defendant, were not protected by attorney-client privilege, in action relating to plaintiff's and hospital's respective advertisements; the e-mails were not authored by or sent to an attorney, and contractor did not establish that the e-mails were necessary to obtain informed legal advice which might not have been given absent the attorney-client privilege.

**[12] Privileged Communications and Confidentiality 311H ⇌102**

311H Privileged Communications and Confidentiality
    311HIII Attorney-Client Privilege
        311Hk102 k. Elements in General; Definition. Most Cited Cases
The central inquiry regarding attorney-client privilege is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice.

**[13] Federal Civil Procedure 170A ⇌1604(1)**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(E) Discovery and Production of Documents and Other Tangible Things
            170AX(E)3 Particular Subject Matters
                170Ak1604 Work Product Privilege; Trial Preparation Materials
                    170Ak1604(1) k. In General. Most Cited Cases
The attorney work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he or she can analyze and prepare his or her client's case.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2009 WL 2407413 (D.N.J.)
(Cite as: 2009 WL 2407413 (D.N.J.))

**[14] Federal Civil Procedure 170A ⇌1604(1)**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(E) Discovery and Production of Documents and Other Tangible Things
            170AX(E)3 Particular Subject Matters
                170Ak1604 Work Product Privilege; Trial Preparation Materials
                    170Ak1604(1) k. In General. Most Cited Cases

The attorney work-product doctrine not only applies to an attorney's work product, but also to the work product of an attorney's agents and consultants.

**[15] Witnesses 410 ⇌16**

410 Witnesses
    410I In General
        410k16 k. Subpoena Duces Tecum. Most Cited Cases

Attorney work-product doctrine did not apply to e-mail messages between defendant advertising agency for defendant local hospital and nonparty contractor that performed research for advertising agency, regarding litigation in state court before hospital removed the action to federal court and before advertising agency was added as a defendant, and regarding plaintiff health care system's subpoena to advertising agency for production of documents, which subpoena had been served before advertising agency was added as a defendant, in action relating to plaintiff's and hospital's respective advertisements; the e-mails were not authored by or sent to an attorney, and contractor presented no evidence that advertising agency and contractor were acting as agents or consultants for attorneys when they prepared the e-mails.

**[16] Privileged Communications and Confidentiality 311H ⇌122**

311H Privileged Communications and Confidentiality
    311HIII Attorney-Client Privilege
        311Hk120 Parties and Interests Represented by Attorney
            311Hk122 k. Common Interest Doctrine; Joint Clients or Joint Defense. Most Cited Cases

The community of interest privilege, which allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others, does not extend to communications between non-attorneys who simply have a joint interest.

**[17] Privileged Communications and Confidentiality 311H ⇌122**

311H Privileged Communications and Confidentiality
    311HIII Attorney-Client Privilege
        311Hk120 Parties and Interests Represented by Attorney
            311Hk122 k. Common Interest Doctrine; Joint Clients or Joint Defense. Most Cited Cases

When co-clients and their common attorneys communicate with one another, those communications are in confidence for privilege purposes.

**[18] Privileged Communications and Confidentiality 311H ⇌141**

311H Privileged Communications and Confidentiality
    311HIII Attorney-Client Privilege
        311Hk135 Mode or Form of Communications
            311Hk141 k. E-Mail and Electronic Communication. Most Cited Cases

E-mail message from defendant advertising agency for defendant local hospital, to nonparty contractor that performed research for advertising agency, in which advertising agency supplied the names of attorneys for advertising agency and hospital, and also asked contractor to send the attorneys a copy of a subpoena served by contractor, was not protected by attorney-client privilege, in action relating to plaintiff health care system's and hospital's respective advertisements; the e-mail was not a communication between attorney and client.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2009 WL 2407413 (D.N.J.)
(Cite as: 2009 WL 2407413 (D.N.J.))

[19] **Witnesses** 410 16

410 Witnesses
    410I In General
        410k16 k. Subpoena Duces Tecum. Most Cited Cases
E-mail message from defendant advertising agency for defendant local hospital, to nonparty contractor that performed research for advertising agency, in which advertising agency supplied the names of attorneys for advertising agency and hospital, and also asked contractor to send the attorneys a copy of a subpoena served by contractor, was not attorney work product, in action relating to plaintiff health care system's and hospital's respective advertisements.

[20] **Federal Civil Procedure** 170A 1604(2)

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(E) Discovery and Production of Documents and Other Tangible Things
            170AX(E)3 Particular Subject Matters
                170Ak1604 Work Product Privilege; Trial Preparation Materials
                    170Ak1604(2) k. Waiver. Most Cited Cases
The predicate of the waiver inquiry in the attorney work-product context is not, as it is in the attorney-client context, whether the material was disclosed, but whether the material was disclosed to an adversary, and the essential question with respect to waiver of work product is whether the material has been kept away from adversaries.

[21] **Federal Civil Procedure** 170A 1604(2)

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(E) Discovery and Production of Documents and Other Tangible Things
            170AX(E)3 Particular Subject Matters
                170Ak1604 Work Product Privilege; Trial Preparation Materials
                    170Ak1604(2) k. Waiver. Most Cited Cases
The party alleging that a waiver of attorney work-product protection has occurred, rather than the party seeking work product protection, has the burden of proof on the waiver issue.

[22] **Witnesses** 410 16

410 Witnesses
    410I In General
        410k16 k. Subpoena Duces Tecum. Most Cited Cases
Disclosure, to defendant advertising agency for defendant local hospital, of certification provided by advertising agency's nonparty research contractor to hospital's counsel, did not waive attorney work-product protection, in action by plaintiff health care system relating to plaintiff's and hospital's respective advertisements; advertising agency and contractor were not adversaries and instead had similar interests when they responded to plaintiff's subpoena for documents before advertising agency was added as a defendant, i.e., advertising agency and contractor both challenged plaintiff's contention that their joint or combined work was misleading.

[23] **Witnesses** 410 16

410 Witnesses
    410I In General
        410k16 k. Subpoena Duces Tecum. Most Cited Cases
Reports that nonparty research contractor, for defendant advertising agency retained by local hospital, prepared for contractor's clients other than advertising agency were not relevant and therefore were not discoverable through subpoena by plaintiff health care system, in action relating to plaintiff's and hospital's respective advertisements.

William M. Tambussi, Christine P. O'Hearn, Brown & Connery, LLP, Westmont, NJ, for Plaintiff.

James John Ferrelli, Duane Morris, LLP, Hamilton, NJ, for Defendant.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2009 WL 2407413 (D.N.J.)
(Cite as: 2009 WL 2407413 (D.N.J.))

## OPINION AND ORDER

JOEL SCHNEIDER, United States Magistrate Judge.

*1 This matter is before the Court on the "Motion of Non-Parties The Star Group and Plesser & Clifford for Protective Order" (hereinafter collectively "moving parties"). [Doc. No. 39]. The issue to be addressed is whether the non-parties' allegedly privileged and irrelevant documents must be produced to plaintiff. The Court has received plaintiff's opposition [Doc. No. 47] and the moving parties' reply [Doc. No. 57]. The Court has exercised its discretion to decide the moving parties' motion without oral argument (*see* Fed.R.Civ.P. 78 and L. Civ. R. 37.1(b)(3)). For the reasons discussed herein, the moving parties' motion is GRANTED in part and DENIED in part.[FN1]

*Background*

By way of brief background, this case involves a dispute between a local hospital and health care system over their respective advertisements. The Star Group ("Star") is defendant's advertising agency of record. Star contends that Plesser & Clifford ("Plesser") is an independent research firm that performed "certain services" for Star related to Star's work for defendant. Moving Parties' Brief at 1, Doc. No. 39. This action was originally filed in New Jersey Superior Court, Camden County, Chancery Division, on February 11, 2009, and was removed to this court on February 20, 2009. While the action was pending in state court the Honorable Mary E. Colalillo entered a February 11, 2009 Order temporarily enjoining defendant from engaging in the publication and distribution of certain advertising. On February 18, 2009, Judge Colalillo modified her February 11, 2009 Order and entered temporary injunctive relief. Defendant removed the action to this court on February 20, 2009.

On February 11, 2009, Star was served with plaintiff's subpoena asking for the production of documents on February 16, 2009. On February 18, 2009, the moving parties produced documents. Star supplemented its production on February 19, 2009. On March 9, 2009, Plesser served additional documents in response to another subpoena plaintiff served. Brief at 2-3. On February 17, 2009, Judge Colalillo held a hearing on Star's motion to quash filed on February 13, 2009. Star contends it agreed at the hearing to produce documents from itself and Plesser by the next day, without waiving any of its objections. Star and Plesser allege that Judge Colalillo directed them to produce documents but to redact objectionable material "pending further determination." Brief at 2. After Plesser was served with plaintiff's subpoena in this case, it produced additional documents and a privilege log listing twelve documents "withheld by virtue of attorney client, work product, litigation strategy, and relevancy." Brief at 2-3.

The documents Star produced to plaintiff contained redactions. Star alleges its redactions fit into three categories (1) the amount of the monthly agency fee Virtua paid Star "which information is highly sensitive," (2) the amount Star charges Virtua for advertising and marketing work performed by vendors and media outlets "which are rates specially negotiated by The Star Group with such third parties and which information is highly sensitive," and (3) strategic recommendations from Star to Virtua for future advertising which is "highly sensitive." Brief at 3.

*2 Plesser claims it withheld documents concerning (1) Cooper's attempt to obtain a temporary restraining order against Virtua, (2) Cooper's subpoena to Plesser, and (3) decisions regarding Plesser's representation and selection of counsel. Brief at 3. Plesser argues, "[b]ecause Cooper has criticized the work of Plesser performed for The Star Group, and The Star Group's work in turn for Virtua, both Plesser and The Star Group share a substantially similar legal interest in ensuring that Cooper's criticism's (sic) of the work are disproven." Brief at 3-4.

Plesser also objects to plaintiff's request for six re-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

ports prepared for Plesser's clients including Star. These reports were identified by Mr. Bernard Plesser during his April 29, 2009 deposition. The reports are: Medical Monitor Studies (2), TEVA Study, Tinea Pedis Study, St. Clair's Hospital Study and Cancer Cooperative Group Study. Brief at 4. Plesser claims "these reports are not the property of Plesser and Plesser does not believe that he has the authority to release them." Brief at 4. Star, which only owns the Medical Monitor Studies, objects to the production of the reports because they are irrelevant to plaintiff's claims. *Id.*

Plaintiff argues the withheld documents are not protected by the community of interest privilege. Plaintiff also argues that Star's redactions are excessive and exceed what was permitted by Judge Colalillo's February 18, 2009 Order and her February 17, 2009 ruling. Brief at 22, Doc. No. 47. In addition, plaintiff argues that Star and Plesser do not have standing to object on relevancy grounds to the production of the requested documents. The Court has reviewed *in camera* Star's redacted documents and Plesser's documents withheld on the grounds of privilege.

*Discussion*

*Star's Redactions*

Plaintiff's basic dispute with Star is its claim that Star's redactions "far exceed the advertising rate information." Brief at 21. Plaintiff also claims that Star's redactions "clearly far exceed that permitted by [Judge Colalillo in her] ... February 18, 2009 Order and as stated by the Court during the February 17,2009 hearing." Brief at 23. Plaintiff concludes "that this Court has no power to modify or alter the prior Order of Judge Colalillo" (*id.*) and, therefore, Star's motion should be denied. Star disputes that Judge Colalillo limited its redactions in the manner alleged by plaintiff.

In order to decide the present motion the Court does not have to determine the precise parameters of Judge Colalillo's directions to the parties. This is so because the Court will independently review Star's documents to decide what is discoverable and should be produced. Plaintiff is incorrect when it argues that the Court may not modify or alter Judge Colalillo's Orders.

[1][2] After a state court action is removed to federal court the "case will then proceed as if it had been brought in the federal court originally." *Tehan v. Disability Management Services, Inc.,* 111 F.Supp.2d 542, 547 (D.N.J.2000) (citations omitted). As to orders that were previously entered in the state case, they remain in full force and effect until dissolved or modified by the district court. 28 U.S.C. § 1450. This statute does not set forth the standard a federal court should apply to determine if it should dissolve or modify orders or judgments entered in a state case. "Instead, the orders or judgments entered by the state court prior to removal should be treated as orders or judgments entered by the district court." *Tehan,* 111 F.Supp.2d at 547. This means that a district court has the power to enforce, continue or modify orders of the state court as it would any such order it might itself have entered. *Id. See also* James Wm. Moore, *Moore's Federal Practice,* § 107.31[3] (3d ed.2008) ("[i]n general, the federal court takes the case on removal exactly as the case stood in state court. Accordingly, the state court pleadings, any discovery had, orders entered, or proceedings will be presumed valid by the district court." Also stating, "[s]tate court rulings (including discovery orders and all other orders up to and including judgment) remain in effect until modified or supplanted by the federal court").

*3 [3][4] Judge Colalillo's Orders and directions to the parties were interlocutory. An interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed.R.Civ.P. 54(b). Although a court has the power to revisit prior decisions, it should hesitate to do so absent a change in circumstances such as when new evidence is

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2009 WL 2407413 (D.N.J.)
(Cite as: 2009 WL 2407413 (D.N.J.))

Page 8

available. *See Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 116-17 (3d Cir.1997). Although this Court has the utmost respect for Judge Colalillo, the Court finds it appropriate to re-examine her discovery Orders. This is necessary because the case is now subject to federal rather than state discovery rules. Also, given the time that has passed since the case was filed, the claims and defenses in the case are now understandably more focused than when Judge Colalillo was facing an imminent injunction hearing.

[5] The Court's *in camera* review of Star's documents confirm that Star's redactions generally fit into one of the three subject matter categories it identified. Further, the Court finds that the amount of the monthly agency fee defendant pays Star, the amount Star charges defendant for advertising and marketing work by vendors and media outlets, and Star's strategic recommendations for future advertising are irrelevant to the issues in the case. As this Court has previously noted, while the scope of Fed.R.Civ.P. 26 discovery is broad, it is not unlimited and may be circumscribed. *See* July 1, 2009 Order at 6, Doc. No. 60. Nonetheless, the Court finds that the following complete documents should be produced because the subject matter is relevant to the issues in the case: STB 0081, 00215 (only as to the identified media outlets), 249-251 and 304-305 (duplicate of 249-251). The remainder of Star's redactions are not relevant to plaintiff's claims concerning defendant's "Top Docs" advertising and do not have to be produced.

[6][7][8] The Court rejects plaintiff's argument that Star does not have standing to object to its subpoena on relevancy grounds. Plaintiff is judicially estopped from making this argument because it took a contrary position when it moved to quash defendant's subpoenas directed to non-parties. [FN2] *See* plaintiff's Reply Brief in Support of Motion to Quash at 1-3, Doc. No. 52.[FN3]

Plaintiff argues "there appear to be many documents related to the Top Doc website which were not produced by Star, ...." Brief at 23. Plaintiff refers to e-mail communications and documents related to the design and operation of the website. *Id.* at 23-24. Since it is unclear whether these documents were Ordered to be produced by Judge Colalillo, the Court will not address the issue in this Order. Now that Star has been joined in the case plaintiff will undoubtedly pursue discovery pursuant to Federal Rules 33 and 34. To the extent plaintiff believes Star's Rule 26 disclosures and discovery answers are inadequate, it may pursue its rights under the Federal Rules and L. Civ. R. 37.1.

*Plesser's Privilege Claim*

*4 The Court has examined *in camera* the twelve (12) documents identified in Plesser's privilege log. *See* Motion at Exhibit G, Doc. No. 39-8.[FN4] Documents 1 to 8 on the list are e-mails between Star and Plesser regarding plaintiff's state court litigation and subpoena. No attorney is copied on the e-mails. Item 9 is an e-mail from Star to Plesser identifying the attorneys for defendant and Star. Item 10 is a fax cover sheet from Plesser to defendant's counsel. Item 11 is an e-mail from defendant's counsel to Plesser regarding Plesser's Certification. Item 12 is Plesser's draft Certification. Plesser claims these documents are protected by the attorney client privilege and work produce doctrine. Plesser also claims the documents are protected by the "community of interest" privilege.[FN5]

[9][10] The moving parties' focus their argument on the community of interest privilege. This privilege "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others." *In re Teleglobe Communications Corp.,* 493 F.3d 345, 364 (3d Cir.2007). However, the community of interest privilege is only applicable if an underlying privilege has been established. *Louisiana Municipal Police Employees Retirement System v. Sealed Air Corp.,* 253 F.R.D. 300, 309 (D.N.J.2008) (citation omitted). Thus, the Court must analyze whether Plesser satisfied its burden of proving that the attor-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2009 WL 2407413 (D.N.J.)
(Cite as: 2009 WL 2407413 (D.N.J.))

Page 9

ney client privilege or work product doctrine applies. *Id.* at 305-06.[FN6]

[11][12] The Court finds that no privilege attaches to documents 1 to 8 and therefore they should be produced. As to the attorney-client privilege, none of the documents was authored by or sent to an attorney. More importantly, Plesser has not established that the e-mails were necessary to obtain informed legal advice which might not have been made absent the attorney client privilege. *See Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). As noted in *In re Gabapentin Patent Litigation,* 214 F.R.D. 178, 181 (D.N.J.2003) (quoting *In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 805 (Fed.Cir.2000)), "the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice." Since Plesser has not satisfied its burden of proof, the Court finds that documents 1 to 8 are not protected by the attorney client privilege.

[13][14][15] As to the work product doctrine, the Court finds that it does not apply. The work product doctrine "shelters the mental processes of the attorney, providing a privileged area within which he [or she] can analyze and prepare his [or her] client's case." *In re Cendant Corp. Sec. Litig.,* 343 F.3d 658, 661-62 (3d Cir.2003) (citation omitted). The doctrine not only applies to an attorney's work product, but also to the work product of an attorney's agents and consultants. *Id.* at 662. Here, the work product doctrine does not apply because no attorney work product is implicated. The documents at issue consist of e-mail communications between representatives of Plesser and Star regarding the lawsuit between plaintiff and defendant. The e-mails were not prepared by or for attorneys. Further, no evidence has been presented that when Star and Plesser prepared the e-mails they were acting as agents or consultants for attorneys.

*5 Plesser argues its documents are protected by the community of interest privilege because:

The Star Group, Plesser, and Virtua all share a common interest in that Cooper in this lawsuit is attempting to impugn the quality and accuracy of work performed by The Star Group and Plesser for Virtua. If Cooper's allegations were accepted, it would suggest that The Star Group and Plesser were involved in creating false advertising claims for Virtua. The Star Group, Plesser, and Virtua have a common interest in combating Cooper's false allegations.

Brief at 8. The Court disagrees. The community of interest privilege is not applicable because no underlying attorney client or work product protection applies to the documents.

[16] There are other reasons why the community of interest privilege is not applicable. The community of interest privilege permits "attorneys representing different clients with similar legal interests to share information without having to disclose it to others." *Teleglobe,* 493 F.3d at 364. Here, Plesser and Star are not represented by different attorneys. Further, the privilege does not extend to communications between non-attorneys who simply have a joint interest. The community of interest privilege is applicable to communications amongst attorneys, "to be eligible for continued protection, the communication must be shared with the *attorney* of the member of the community of interest." *Id.* (emphasis in original). The Third Circuit explained:

[t]he requirement that the clients' separate attorneys share information (and not the clients themselves) derives from the community-of-interest privilege's roots in the old joint-defense privilege, which (to repeat) was developed to allow *attorneys* to coordinate their clients' criminal defense strategies.

*Id.* (emphasis in original). Further:
[t]he attorney-sharing requirement helps prevent abuse by ensuring that the common-interest privilege only supplants the disclosure rule when attorneys, not clients, decide to share information in order to coordinate legal strategies.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2009 WL 2407413 (D.N.J.)
(Cite as: 2009 WL 2407413 (D.N.J.))

Page 10

*Id.*

[17] Although Plesser acknowledges the withheld e-mails are not communications amongst attorneys, it nevertheless argues the community of interest privilege applies. Plesser contends the e-mails are protected because they "all have to do with legal strategy regarding the coordinated response to Cooper's improper attempt to force 'compliance' with a temporary restraining order not issued against Star or Plesser; Cooper's subpoena served on Plesser; and retention of Woodcock Washburn to represent both parties in response to Cooper's actions." Reply Brief at 3, Doc. No. 59. Plesser further argues the communications "involve legal strategy ultimately employed by Star and Plesser's joint attorneys, and involve communications between 'privileged persons' ". *Id.* Plesser's argument fails, however, because Plesser and Star exchanged non-privileged information at a time when they were not acting as an agent or consultant for different attorneys. The community of interest privilege does not encompass communications between two non-parties about a non-privileged matter of joint interest.[FN7]

*6 [18][19] Document 9 is an e-mail from Star to Plesser supplying the names of the attorneys for Star and defendant. Star asks Plesser to send the attorneys a copy of the subpoena Plesser served. Since the e-mail is not an attorney client communication, and it is not attorney work product, the document must be produced.

Document 10 is a fax cover sheet from Plesser to Virtua's counsel that attaches documents 11 and 12. Document 11 is an e-mail from Virtua's counsel (Philip H. Labowitz, Esquire) to Plesser with a draft Certification for Mr. Plesser to sign. Document 12 is the draft Certification with a handwritten comment.

[20][21][22] The Court finds that documents 10, 11 and 12 are protected by the attorney work product doctrine and do not have to be produced. The e-mail and draft Certification were plainly prepared by Virtua's counsel for litigation purposes and reflect counsel's strategy and thought processes. Further, the Court finds that the discovery protection afforded to these documents was not waived. The waiver of the work-product doctrine is different than the waiver of the attorney-client privilege. "The predicate of the waiver inquiry in the work-product context is not, as it is in the attorney-client context, whether the material was disclosed, but whether the material was disclosed to an adversary." *Maldonado v. New Jersey ex. rel. Administrative Office of Courts-Probation Division,* 225 F.R.D. 120, 131 (D.N.J.2004). The essential question with respect to waiver of work product is whether the material has been kept away from adversaries. *Id.* The party alleging that a waiver occurred, rather than the party seeking work product production, has the burden of proof on the waiver issue. *Id.* at 132. The Court finds that plaintiff has not demonstrated that the contents of documents 10, 11 and 12 were divulged to an adversary. Plesser and Star had similar interests when they responded to plaintiff's subpoena. After all, both companies challenged plaintiff's contention that their joint or combined work was misleading. Therefore, the disclosure of Mr. Labowitz's work product to Plesser and Star did not result in the waiver of the work product doctrine, and documents 10, 11 and 12 do not have to be produced.

*Six Prior Studies*

[23] Cooper requests that Plesser produce six (6) studies it performed for Star's clients. Two of the reports are owned by Star. Cooper argues the reports are discoverable because they may disclose that Plesser made different disclosures than it did in its "Top Docs" work. Brief at 26-27. Cooper argues:

For example, if all or many of the prior reports prepared by Plesser for Star disclosed such information, why was it not disclosed in this case related to this study? Further, if all or many of the prior reports failed to disclose such information, this

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2009 WL 2407413 (D.N.J.)
(Cite as: 2009 WL 2407413 (D.N.J.))

The Star Group ("Star") was not a party. Since then the Court granted plaintiff's motion to amend its complaint to name Star. [Doc. No. 63]. Plaintiff filed its amended complaint on July 31, 2009. [Doc. No. 71].

FN2. The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (citations omitted). Invocation of the doctrine is within a court's discretion. *Id.* at 750, 121 S.Ct. 1808.

FN3. To be clear, the Court is not contending that plaintiff played "fast and loose" with the rules. The Court acknowledges that when plaintiff filed its present motion the Court had not yet granted plaintiff's motion to amend to add Star as a defend- ant.

FN4. Numbers 4 and 5 duplicate numbers 1 and 2.

FN5. Although Plesser claims a "litigation strategy" privilege, this is not discussed in its moving papers.

FN6. Plesser also argues its withheld documents are irrelevant. The Court will not separately analyze each document for relevancy. The documents generally concern plaintiff's document request and this litigation. These topics are arguably relevant to the issues in the case. Further, Plesser did not make a meaningful effort to demonstrate that its documents are irrelevant.

FN7. It is unclear if Plesser and Star are pursuing the co-client or joint-client privilege. This privilege exists where two or more clients engage one or more common attorneys to represent them on a matter of interest to all. *Teleglobe,* 493 F.3d at 362 n. 15. "When co-clients and their common attorneys communicate with one another, those communications are 'in confidence' for privilege purposes." *Id.* at 363. The co-client privilege does not apply here because the subject documents do not contain communications with a joint attorney.

D.N.J.,2009.
Cooper Health System v. Virtua Health, Inc.
--- F.R.D. ----, 2009 WL 2407413 (D.N.J.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2009 WL 2407413 (D.N.J.)
(Cite as: 2009 WL 2407413 (D.N.J.))

Page 11

would support Cooper's claim that the retention of Mr. Plesser was nothing more than a commercially orchestrated advertising scheme and that Plesser was never independent or unbiased and always prepared reports for Star which were beneficial to Star's clients. Thus, these prior reports prepared by Plesser for Star and Star's clients are likely to lead to the discovery of relevant evidence related to Cooper's claims and are therefore discoverable.

*7 *Id.* at 26-27.

Based on the present record before the Court, the Court finds that the six reports are not relevant to the claims and defenses in the case. Further, even if the reports are minimally relevant, the Court finds that a weighing of the factors in Fed.R.Civ.P. 26(b)(2)(C) results in a finding that the reports should not be produced. The issue in dispute concerns Star and Plesser's work for defendant, not work they did for other clients. If the Court permits plaintiff to discovery Plesser's reports for clients that have nothing to do with the issues in the case, it would unreasonably expand the scope of discovery and result in needless satellite litigation. Plaintiff's hope that the requested reports may contain relevant information does not justify its request. Although Plesser's work for clients other than defendant is not necessarily immune from discovery because of trade secret or confidentiality concerns, the requested reports must be relevant before they will be ordered to be produced. *See generally Opperman v. Allstate New Jersey Insurance Co.*, C.A. No. 07-1887(RMB), 2008 WL 5071044, at *2 (D.N.J. Nov. 24, 2008). Plaintiff has not demonstrated that the requested reports are relevant. Indeed, plaintiff has not even addressed the subject matter of the reports.

In response to plaintiff's argument that Plesser does not have standing to raise a relevancy objection, the Court relies on Fed.R.Civ.P. 26(b)(2)(C)(iii), to deny plaintiff's discovery request. This rule provides that the Court, "on its own ... *must* limit the frequency or extent of discovery ... if it determines that ... the burden or expense of the proposed discovery outweighs its likely benefit" (emphasis supplied). The Court makes this finding and exercises its discretion to bar the production of Plesser's six reports. The Court has already determined that plaintiff has not demonstrated that the reports are relevant. Plesser and its clients should not be burdened by the disclosure of their confidential business information simply because plaintiff hopes the requested reports might contain information which at most is marginally relevant to the issues in the case. Pursuant to Rule 26(b)(2)(C), the Court can and does exercise its discretion to limit discovery of Plesser and Star's trade secret or confidential business information where the requested documents are irrelevant to the claims and defenses in the case.

*Conclusion*

For all the foregoing reasons, and good cause being shown,

IT IS HEREBY ORDERED this 4th day of August, 2009, that Star and Plesser's Motion for Protective order is GRANTED in part and DENIED in part; and

IT IS FURTHER ORDERED that Star shall produce complete copies of documents Bates stamped STB 0081, 00215 (only as to the identified media outlets), 249-251 and 304-305 (duplicate of 249-251). None of Star's other redactions shall be produced; and

IT IS FURTHER ORDERED that Plesser shall produce documents 1 to 9; and

*8 IT IS FURTHER ORDERED that documents 10, 11 and 12 do not have to be produced; and

IT IS FURTHER ORDERED that by August 18, 2009, Plesser and Star shall produce the documents identified in this Order.

FN1. When plaintiff's motion was filed

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.