

# Thompson Wigdor & Gilly LLP ATTORNEYS AND COUNSELORS AT LAW

85 Fifth Avenue
New York, NY 10003
Tel 212.257.6800
Fax 212.257.6845
www.twglaw.com

**Ariel Y. Graff**
agraff@twglaw.com

December 1, 2009

**BY ECF AND FACSIMILE**

Honorable Michael A. Shipp
United States Magistrate Judge
for the District of New Jersey
50 Walnut Street, Courtroom MLK 2C
Newark, New Jersey 07101

    Re:    <u>*Joseph C. Weber v. Atlantic Zeiser/Orell Fussli*, 08-CV-0977 (DRD)(MAS)</u>

Dear Judge Shipp:

We represent Plaintiff Joseph C. Weber ("Plaintiff" or "Mr. Weber") in the above-referenced matter, and write in response to Defendant's letter dated November 25, 2009, which requests the Court's intervention to compel production of Mr. Weber's complete federal and state tax returns, including all schedules and attachments, for the years 2004 through 2008. As set forth below, Defendant's request is completely without merit and should be denied, because Defendant has failed to demonstrate that Mr. Weber's tax returns are in any way relevant to this litigation, or that Defendant has any need, let alone a "compelling need," for access to information in the returns that is not otherwise readily available from other sources.[1, 2] Moreover, although Defendant's purported justifications for seeking Mr.

---

[1]    *See*, *e.g.*, *Wiggins v. Clementon Police Dep't*, No. 07-5033 (RBK/JS), 2009 U.S. Dist. LEXIS 66955, at *9-10 (D.N.J. July 30, 2009) (The party seeking the tax return information must demonstrate: (i) that the party whose tax information is sought has made his or her tax information an issue in the case; and (ii) a compelling need for the returns because the information is not otherwise readily available from other sources.).

[2]    Defendant's letter mistakenly asserts that "pursuant to Plaintiff's correspondence of November 24, 2009, Plaintiff is *not* asserting privacy concerns" in connection with Defendant's demand for production of his tax returns. However, Plaintiff's correspondence, which is attached as Ex. "B" to Defendant's letter, plainly states that "we *do* maintain that Mr. Weber's tax returns are 'confidential,'" and goes on to explain that this concern is not obviated by the confidentiality order in this case because of the "qualified privilege" that limits discovery of

**Thompson Wigdor & Gilly LLP** ATTORNEYS AND COUNSELORS AT LAW

Honorable Michael A. Shipp
December 1, 2009
Page 2

Weber's tax returns arise out of his deposition testimony on October 28, 2008, Defendant did not even request Mr. Weber's tax returns until more than *one year* later, during the final week of discovery on November 17, 2009.[3]  Accordingly, Defendant's last minute request is both untimely and devoid of merit, and should therefore be denied.

Defendant claims that it requires production of Mr. Weber's tax returns for two completely untenable reasons.  First, Defendant claims that it purportedly requires production of Mr. Weber's tax returns "to understand the level of compensation and investment returns that Mr. Weber claims to [sic] both while employed by Atlantic Zeiser, Inc." and subsequent to his termination in August 2006.  However, this purported justification is belied by the fact that: (i) Defendant is already aware of the compensation that Mr. Weber earned during his 30-year career as its employee; and (ii) Mr. Weber has already produced all IRS Forms W-2 concerning his post-termination income.  Defendant is therefore already in possession of all financial information that it requires in connection with Mr. Weber's claims for lost wages in this case, and there is no further information relevant to his pre- or post-termination compensation that might be discovered in his complete federal and state tax returns.[4]

Defendant's second purported ground for seeking Mr. Weber's tax returns is likewise patently frivolous.  Specifically, Defendant claims that because Mr. Weber testified during the first day of his deposition, on October 28, 2008 – more than *one year* prior to Defendant's first request for his tax returns – that he was uncertain of his eventual retirement date because:

---

individuals' tax returns.  *See*, *e.g.*, *Wiggins*, 2009 U.S. Dist. LEXIS 66955, at *9 ("[T]he Third Circuit recognizes the public policy favoring nondisclosure of income tax returns as confidential communications between a taxpayer and the government.") (citing *DeMasi v. Weiss*, 669 F.2d 114, 119 (3d Cir. 1982)); *Tele-Radio Systems Ltd. v. De Forest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981) ("While tax returns do not enjoy an absolute privilege from discovery, a public policy against unnecessary public disclosures arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns.").

[3]    *See generally Erbe Elektromedizin GmBH, Erbe USA, Inc. v. Canady*, No. 05-1674 (DWA), 2006 U.S. Dist. LEXIS 84578, at *4 (W.D. Pa. Nov. 21, 2006) ("[T]here can be no doubt that counsel was aware that 'complete' means just that - that all discovery initiatives shall be served within sufficient time to allow responses to be completed prior to the close of discovery.  Based upon the same, I find Plaintiffs' discovery initiatives served on the last day of discovery to be untimely, such that Defendants are not required to respond to the same.").

[4]    *See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc.*, 174 F.R.D. 572, 585 (D.N.J. 1997) (declining to compel disclosure of income tax returns, although relevant, because alternative sources of information available).

Thompson Wigdor & Gilly LLP ATTORNEYS AND COUNSELORS AT LAW

Honorable Michael A. Shipp
December 1, 2009
Page 3

> I just don't know what my personal financial situation is going to look like, let's say, 65, normal retirement is, you know. I can't – I don't know. I don't know if I [will] have to continue working or not to continue working.[5]

Significantly, Defendant's counsel did not even bother to ask Mr. Weber during his deposition in October 2008, nor during his continued deposition in September 2009, what level of retirement savings Mr. Weber anticipates he would require to stop working, or what other potential financial needs or obligations to his family or others may have been impacted be current economic conditions. Without this information, Defendant would be unable to even begin to project Mr. Weber's anticipated retirement date on the basis of whatever information regarding retirement savings that might be gleaned from his tax returns.[6] Defendant's counsel likewise fails to consider the possibility that any factors other than retirement savings might influence Mr. Weber's eventual retirement date, which is ultimately and necessarily a matter of his own discretion under any circumstances. As such, there is simply nothing that Defendant could possibly glean from Mr. Weber's full tax returns that would have any bearing on Mr. Weber's anticipated retirement date for purposes of calculating his claims for last wages in this case.

Accordingly, Plaintiff respectfully requests that Defendant's application to compel production of his tax returns be denied in its entirety.

Respectfully submitted,

*Ariel Graff*
Ariel Y. Graff

cc:    Peter Cipparulo, III, Esq. (*Counsel for Defendant* – by ECF)

---

[5]    *See* Def.'s letter at Ex. C. (Weber Tr., Oct. 28, 2008, page 147, lines 12-16).

[6]    As Defendant's letter notes, Mr. Weber testified during his continued deposition on September 10, 2009, that he has *not* been receiving payments from his 401k. As such, it is difficult to understand what portion of Mr. Weber's tax returns might enable Defendant to determine the current value of Mr. Weber's 401k savings in any case.