# GARRITY, GRAHAM, MURPHY, GAROFALO & FLINN

A PROFESSIONAL CORPORATION

COUNSELLORS AT LAW

Peter Cipparulo, III, Esq.
NJ Bar
Of Counsel

Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

Phone Ext. 207
E-Mail: pc@garritygraham.com

ONE LACKAWANNA PLAZA, PO BOX 4205
MONTCLAIR, NJ 07042-8205
(973) 509-7500
FAX (973) 509-0414

New York Office

PMB 46015
140 BROADWAY
46TH FLOOR
NEW YORK, NY 10005
(212) 858-7716

December 4, 2009

**VIA ECF & FAX**

Honorable Michael A. Shipp, Magistrate
United States District Court
District of New Jersey
M.L. King, Jr. Federal Building & Courthouse
50 Walnut Street
Newark, NJ   07102

      Re:    **Weber, Joseph v. Atlantic Zeiser, Inc.**
              **Civil Action No.**   :     **08-CV-00977 (DRD/MAS)**
              **Our File No.**      :     **512.21533/JSM**

Dear Judge Shipp:

Please accept this letter in reply to plaintiff's letter of December 1, 2009 contesting defendant's application for the plaintiff's tax returns. First, plaintiff is mistaken where he suggests that defendant first requested plaintiff's tax returns on November 17, 2009. In fact, defendant requested the plaintiff's tax returns for the years 2007 and 2008 by its original Demand for Production of Documents dated June 19, 2008. Specific requests were made for the tax returns for the tax years 2006 and 2007. (See Exhibit G - copy of defendant's Demand for Production of Documents Number 7). As discussed in defendant's original submission, dated November 25, 2009, Mr. Weber made clear in his deposition that the economy and his investment situation dictate how long you he plans to work. To quote the deposition transcript directly:

      Q. How long do you plan to work to:

      A. That's hard to say.  Tell you why, because the way the economy situation is, I can't answer that not knowing what ... my 401K has been diminished just about.

GARRITY, GRAHAM, MURPHY, GAROFALO & FLINN

December 4, 2009
Page 2

    Q. I think probably everyone's in this room.

    A. Unfortunately. So which I was counting on, it wouldn't make me rich, but it would help me to survive. So depending for my age, depending how much gets recovered and how quick it gets recovered, I cannot answer that question specifically.

    Q. Is the reason why you can't answer is because of the uncertain economy, you just don't know where your 401K may be in a few years from now?

    A. I just don't know what my personal financial situation is going to look like, let's say, 65, normal retirement is, you know. I can't... I don't know. I don't know if I have to continue working or not to continue working. (See Exhibit C - defendant's papers of November 25, 2009 T146:19-25 to T147:1-16).

    Mr. Weber later indicated in his deposition that he has no other sources of income other then his social security. (See Exhibit C of defendant's letter of November 25, 2009, T147:20-23). He further testified in his most recent deposition that he is not receiving any payout from any other sort of retirement investments either through a 401K and/or IRA. (See Exhibit D of defendant's papers of November 25, 2009, T25:4-7).

    Frankly, defendant does not accept Mr. Weber's representations. While veracity of witnesses is an issue in every case, it is a particularly compelling one in this litigation. Mr. Weber testified in his deposition that he was promoted to Vice President of Customer Service in 2000 by the former CEO of Atlantic Zeiser, Walter Klingler, and that he is entitled to $160,000 deferred compensation agreement when he reaches the age of sixty five (65). Atlantic Zeiser's CEO, Tom Coco, testified that Mr. Weber had never been promoted to Vice President of Customer Service and that he was unaware of any existence of the deferred compensation agreement.

    Specifically, Mr. Weber testified in his most recent deposition that Mr. Klingler promoted him to VP of Customer Service in 2000. (See Exhibit H - page T47:14-17). Mr.

GARRITY, GRAHAM, MURPHY, GAROFALO & FLINN

December 4, 2009
Page 3

Weber testified that he always maintained an excellent working relationship with Walter Klingler. (See Exhibit I - T81:15-18). Regarding the deferred compensation agreement, he testified that while he was working at Atlantic Zeiser that no one from Atlantic Zeiser ever advised him that the deferred compensation agreement was no longer in effect. (See Exhibit I - T42:25-T43:1-10 and T43:16-22).

Most recently, the deposition of the former CEO of Atlantic Zeiser, Walter Klingler, was conducted at his apartment in New York City, New York. Mr. Klingler presents a much different version than Mr. Weber. Mr. Klingler specifically testified that he told Mr. Weber that the deferred compensation agreement was no longer in force. (See Exhibit J - deposition transcript for deposition of Walter Klingler, T58:14-21). In fact, he testified that Mr. Weber always complained about the deferred compensation no longer applying to him. (See Exhibit J - T59:15-18). Furthermore, Mr. Klingler testified that he never promoted Mr. Weber to Vice President of Customer Service (See Exhibit J, T38:18-25 and T39:1-3). In fact, Mr. Klingler testified that from the time he was CEO of Atlantic Zeiser from 1991 to 2005, he never promoted Mr. Weber and Mr. Weber always maintained the same position. (See Exhibit J - T42:21-5 and T43:1-2). Thus, while Mr. Weber contends he is entitled to the deferred compensation agreement and was promoted to an officer of the company, the CEO Mr. Weber reported to, Walter Klingler, testified he never promoted him and, also, told Mr. Weber the deferred compensation agreement was no longer in effect.

It should also be noted that Walter Klingler who has not been employed with Atlantic Zeiser since 2005 did not leave on the best of terms with Atlantic Zeiser. (See Exhibit J - T115:1-12). Thus, certainly Mr. Klingler has no motivation to provide testimony favorable to

GARRITY, GRAHAM, MURPHY, GAROFALO & FLINN

December 4, 2009
Page 4

Atlantic Zeiser.

Based on the above, the defendant has made a showing that is necessary to review Mr. Weber's tax returns in order to understand any potential sources of outside income. Merely relying on Mr. Weber's testimony that he has no other sources of outside income is not sufficient for defendant's purposes. Mr. Weber has been less than candid during this litigation. Tax returns may provide a better idea of the nature of Mr. Weber's outside income. Defendant originally requested plaintiff's tax returns of 2006 and 2007 tax returns in June 2008 and a supplemental request was made regarding tax returns was made prior to the end of discovery end date. There is a Confidentiality Order in place. Based on the above, defendant has made the necessary showing for Mr. Weber to be compelled to produce his tax returns for the tax years 2004-2008.

Respectfully submitted,

*[signature]*

PETER CIPPARULO, III

PC:dt
Enclosures
cc:   Ari Graff, Esq./Thompson, Wigdor & Gilly, LLP (Via ECF)
M:\Data\CLI\512\215\33\Court\Magistrate Shipp 17.wpd