# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOSEPH WEBER,                          :

                                       :          Hon. Dickinson R. Debevoise

        Plaintiff,                 :

-v-                                    :

ATLANTIC ZEISER/ORELL FUSSLI,          :          Civil Action No. 08977(DRD)(MAS)

                                       :

                                       :          **FINAL PRETRIAL ORDER**

        Defendant.                 :

                                       :

This matter having come before the Court for a pretrial conference pursuant to Fed. R.

Civ. P. 16: Thompson Widger & Gilly having appeared for plaintiff and Garrity, Graham,

Murphy, Garofalo & Flinn having appeared for defendant(s); the following Final Pretrial Order

is hereby entered:

## 1. **JURISDICTION** (Set forth specifically)

The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as

this action involves federal questions regarding the deprivation of Plaintiff's rights under Section

1981, Title VII and the ADEA. The Court has supplemental jurisdiction over Plaintiff's related

claims arising under state law pursuant to 28 U.S.C. § 1367(a).

## 2. **PENDING/CONTEMPLATED MOTION** (Set forth all pending or contemplated motions, whether dispositive or addressed to discovery or the calendar. Also set forth the nature of the motion and the return date. If the court indicated that it would rule on any matter at pretrial, summarize that matter and each party's position).

All motions filed on March 1, 2010 pursuant to letter by the Honorable Dickinson R.

Debevoise, U.S.D.J. dated February 2, 2010.

3. **STIPULATION OF FACTS** (Set forth in narrative form a comprehensive listing of all uncontested facts, including all answers to interrogatories and admissions, to which there is agreement among the parties).

1. Joseph Weber was born in Bergen Belsen, Germany, on October 1, 1946.

2. Mr. Weber began work in 1976 at a predecessor company to Atlantic Zeiser, Inc.

3. Mr. Weber continuously worked at Atlantic Zeiser, Inc. or one of its predecessor companies from 1976 until he was terminated from Atlantic Zeiser, Inc. on August 24, 2006.

4. During his employment at Atlantic Zeiser, Mr. Weber was permitted to take time off from work to observe Jewish holidays without loss of pay or sick days.

5. Walter Klingler was President and CEO of Atlantic Zeiser, Inc. from 1991 to March 2005.

6. Mr. Weber began his career at the Company in 1976, when he accepted a position as a customer service representative.

4. **PLAINTIFF'S CONTESTED FACTS** (Stated separately for each defendant. Proof shall be limited at trial to the matters set forth below. Failure to set forth any matter shall be deemed a waiver thereof.)

A. Plaintiff intends to prove the following contested facts with regard to liability:

1. Mr. Weber is an observant Orthodox Jew and was born on October 1, 1946 in the Bergen-Belsen concentration camp to parents who were Holocaust survivors.

2. Mr. Weber quickly distinguished himself as an exemplary employee, and was steadily promoted through the ranks to become Vice President/Director of Customer Service.

3. Over the course of his employment at the Company, Mr. Weber never received any complaints concerning his work, and was never subjected to discipline of any sort. To the contrary, the Company consistently commended Mr. Weber for the quality of his work and his commitment to the Company.

4. During his employment, Mr. Weber had significant experience working in both the impact and non-impact sides of Atlantic Zeiser's business.

5. As part of his religious observance and identification with his Jewish ancestry, Mr. Weber, like most Orthodox Jewish men, covers his head with a *yarmulke* at all times, including while at work.  Similarly, Mr. Weber does not work on annual Jewish holidays, or on the Jewish Sabbath, which begins on Friday evenings.

6. In or around 1998-99, Bruno Masser, a non-Jewish, German male, was transferred from his position with Atlantic Zeiser's corporate parent in Germany to the IT department of its U.S. headquarters.

7. Although Masser did not work directly with Mr. Weber, he learned that Mr. Weber was Jewish and began making pointed, discriminatory statements to Mr. Weber derogating Judaism and Mr. Weber as a Jew, often in front of other employees, including Mr. Weber's direct reports, as well as to colleagues at the Company.

8. Masser related to Mr. Weber and other employees at the Company conspiracy theories such as the tired, anti-Semitic canard that "the Jews are trying to take over the world," and his firmly held belief that they need to be prevented from doing so.  Masser also sought to marginalize Mr. Weber's position at the Company, and even stated to Mr. Weber: "you don't need to be in an office and I'll get you out."

9. Knowing that the Company's officers in general, and in particular its CEO Walter Klinger, had always been accommodating of his religious needs and understanding of his identity as an Orthodox Jew, Mr. Weber brought Masser's statements to Klinger's attention.

10. In response, Klingler took prompt action because he did not tolerate discriminatory conduct and Masser was promptly removed from Atlantic Zeiser's U.S. headquarters and returned to Germany.

11. In or around 2005, Atlantic Zeiser's German-based parent corporation appointed Tom Coco to succeed Walter Klinger as CEO of the Company's U.S.-based operations.

12. Despite Mr. Weber's unblemished track record of exemplary service as the Company's longest-serving employee, Coco quickly targeted Mr. Weber for discrimination and harassment because of his Jewish ancestry/ethnicity, age, and religion.

13. Coco described Mr. Weber's compensation as an unwelcome "expense" for the Company, and explained that the Company's German-based President and CEO, Klaus Oesch, wanted to cut-down on such expenses.  Mr. Weber understood that Coco was referring to the "expense" of the contractual

benefits and deferred compensation that Mr. Weber would receive if he continued working at the Company until retiring at the age of 65.

14. Coco's discriminatory attempts to accelerate Mr. Weber's retirement emboldened other employees to make similar, harassing comments about Mr. Weber's age.

15. For example, Connie Stoerk, the German-born, Caucasian Director of Atlantic Zeiser's engineering department, would openly attribute minor, seemingly innocuous workplace occurrences to the fact that Mr. Weber was approaching age 65. Stoerk also ridiculed and mocked Mr. Weber by telling him that "the way you walk, the way you stand, [and] the way you speak" demonstrated that he was too old to continue working at the Company.

16. Coco and Oesch also permitted Bruno Masser to return from Germany to work at Atlantic Zeiser's U.S. offices, despite Masser's documented record of anti-Jewish rhetoric and hostility to Mr. Weber because of his Jewish ancestry and religion.

17. Upon Masser's return, Stoerk escalated her harassment of Mr. Weber with renewed vigor, and expressed optimism that "now things will change" for Mr. Weber and other Jewish employees with Coco in control of the Company in the wake of Klinger's retirement.

18. Masser stated to Mr. Weber and other employees that although "the Jews control the world" and the "Jews have too much power," appropriate measures would soon be taken to prevent the Jews from obtaining control over Atlantic Zeiser.

19. Masser also stated that, with Coco in charge, the Company would soon reverse its longstanding accommodation of Mr. Weber's religious observance.

20. Encouraged by Masser's return with the full approval of Coco and Oesch, other employees possessing animus against Jews, and against Mr. Weber on that basis, began to harass Mr. Weber with impunity.

21. Stoerk began referring to Mr. Weber as "little doggy," a phrase derived from the German *schweinhund*, which was popularized as an anti-Jewish slur during the Holocaust. Stoerk also condemned Jews for "sucking money" out of Germany in the form of reparations for the Holocaust.

22. Despite objecting to this discriminatory harassment, Mr. Weber was subjected to continued discriminatory and harassing comments.

23. After realizing that Stoerk and Masser were simply unwilling to stop making harassing comments about his Jewish ancestry/ethnicity, religion, and age,

Mr. Weber formally complained about their conduct in a meeting with Michael Raimondo, the Company's Director of Operations and Personnel.

24. But rather than address Mr. Weber's complaints, Raimondo indicated that he was powerless to intervene against Stoerk or Masser and make them stop.  He advised Mr. Weber that Coco was the only individual at Atlantic Zeiser with the authority to restrain them.

25. When Mr. Weber complained to Coco about discrimination and harassment by Stoerk and Masser, Coco advised him that Masser "had [German-based President and CEO] Oesch's ear," and that he was powerless to take any action against Stoerk or Masser in response to Mr. Weber's complaints because the discrimination and harassment were "being directed by Bruno Masser."

26. Despite Mr. Weber's repeated objections and requests for assistance, neither Coco nor Raimondo took any actions to address the discrimination and harassment that Mr. Weber was being subjected to at Atlantic Zeiser.

27. Instead, on or about July 1, 2006 – within days of Mr. Weber's protected complaints of discrimination – Coco demoted Mr. Weber in retaliation for his complaints of discrimination.

28. Specifically, Coco instructed Mr. Weber to vacate the office he had occupied for years and transfer instead to a small, cubicle workspace.

29. Coco also stripped Mr. Weber of supervisory authority over his four direct reports, and ordered that Mr. Weber himself was to report to a junior employee with less than two years of experience at the Company and no prior experience in customer service.

30. Coco refused to explain the basis for these actions and would not identify any performance-related or business concerns that might have warranted such a sudden and humiliating demotion.

31. The following day, Mr. Weber approached Coco and asked him to reconsider his decision to demote him – after nearly 30 years of loyal and exemplary service to the Company.

32. Mr. Weber also asserted that the demotion was an act of discrimination based on his age and being Jewish, as well as a reprisal for his earlier complaints of discrimination.

33. Coco again refused to provide Mr. Weber with any sort of explanation to justify this sudden demotion, and merely confirmed that, "This is how we're going to do it now."

34. Shocked and distressed by the sudden change in his role at the Company, Mr. Weber obtained approval to exercise approximately three weeks of accrued vacation time.

35. During this time off, Mr. Weber sought the advice of an attorney in connection with the harassment and apparent retaliation that he was experiencing at the Company in reprisal for his protected complaints of discrimination.

36. On or about July 7, 2006, Mr. Weber's attorney sent a letter to Coco questioning the Company's apparent mistreatment of Mr. Weber and asserting that the Company may have exposed itself to potential claims of discrimination, harassment and hostile work environment on the basis of Mr. Weber's age, ancestry and religion.

37. Mr. Weber remained on vacation when his attorney and the Company attempted, unsuccessfully, to resolve the situation.  Mr. Weber then returned to work.

38. Undaunted, Coco responded to the letter and discussions with Mr. Weber's lawyer by redoubling the Company's campaign of discrimination and retaliation against Mr. Weber after he returned to work on July 31, 2006, in an attempt to force Mr. Weber to quit.

39. Coco cancelled Mr. Weber's Exxon gas card and corporate American Express card without explanation, and refused to provide Mr. Weber with new computer software that was installed for other employees or with copies of the Company's new customer return and credit-related policies, which were necessary for the performance of his job.

40. Mr. Weber was also ignored and ostracized by his colleagues, who had been informed of his decision to retain counsel in connection with his complaints of discrimination and harassment at the Company, another form of retaliation intended to punish Mr. Weber for seeking to protect his civil rights.

41. Although Mr. Weber returned to work and reported that he was ready to work in whatever capacity and wherever Coco wanted, Mr. Weber was given no job responsibilities to perform whatsoever and was left in his office alone without job duties assigned to him despite his requests.

42. The Company's discriminatory and retaliatory motivation was also evidenced by Coco's admissions that, among other things, he and the Company had merely "indulged" Mr. Weber when it "let" him observe Jewish holidays by accommodating his schedule for the past 30 years, and that the Company did not have any legal obligation to do so.

43. On August 24, 2006, in an ultimate act of retaliation, Coco summoned Mr. Weber to his office and, together with Raimondo, summarily terminated Mr. Weber's employment.

44. Coco did not even attempt to justify or explain the termination, stating only that "you got the ball rolling by involving attorneys in this."

45. Coco also disingenuously suggested for the very first time that Mr. Weber's termination was merely the outgrowth of a corporate "restructuring" process – a pretextual explanation belied by the fact that Mr. Weber was the only employee at Atlantic Zeiser who was affected by this purported "restructuring."

46. This "restructuring" process was a pretext to cover up the Company's retaliation against Mr. Weber in reprisal for exercising his civil rights.

47. Although Mr. Weber's Deferred Compensation Agreement with the Company would have entitled him to receive in excess of $180,000 upon retiring at age 65, Coco presented him with a Separation Agreement and General Release that provided for payment of only $20,833, and was further conditioned on Mr. Weber's agreement to waive any and all legal claims against the Company.

48. Despite facing sudden unemployment at the age of 60, Mr. Weber could not agree to waive his rights and allow the Company to get away with the retaliation and discrimination that he had suffered; therefore he filed this action.

B. Plaintiff intends to prove the following contested facts with regard to damages: (This must include each item of damages, the amount of each item, the factual basis for each item and, if punitive damages are claimed, the facts upon which plaintiff will rely to establish punitive damages.)

1. At the age of 60, after 30 years of exemplary and loyal service to Atlantic Zeiser, Mr. Weber was left without a job and with little hope of obtaining new, comparable employment. Unlawfully deprived of his income and retirement benefits, Mr. Weber's financial security and long-term planning were in ruins.

2. As a result, Mr. Weber is entitled to economic damages for lost salary, benefits and other compensation in the form of back pay for the period between his unlawful termination on August 24, 2006 to the date of judgment in this action, in the amount of approximately $197,000, plus prejudgment interest.

3. Mr. Weber is also entitled to economic damages for lost salary, benefits and other compensation in the form of front pay for the period between the date on which judgment is entered in this action to the date Mr. Weber would have retired from Atlantic Zeiser, in the amount of approximately $425,000.

4. Mr. Weber is also entitled to economic damages for the lost deferred compensation retirement benefit to which he was entitled upon retirement at or after age 65, in the amount of approximately $180,000.

5. Mr. Weber's knowledge that he had been terminated because of his Jewish ancestry, religious observance, and age, as well as retaliation for his complaints against such discrimination, caused him to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

6. Although the quality of his work and his commitment to the Company had never been questioned, Mr. Weber faced the further anxiety, stress and humiliation of telling his family, friends and professional contacts that he had been terminated.

7. As a result, Mr. Weber is entitled to compensatory damages for emotional distress, as well as harm to his reputation and career progression, in the amount of $750,000, plus prejudgment interest.

8. Mr. Weber objected to discrimination and harassment that he was being subjected after Coco became Atlantic Zeiser's CEO and requested assistance from both Coco and Raimondo to bring this unlawful conduct to a stop.

9. Neither Coco nor Raimondo took any action to investigate Mr. Weber's complaints or to address or stop such unlawful discrimination and harassment. To the contrary, in response to Mr. Weber's protected conduct, the Company retaliated against Mr. Weber.

10. The Company's unlawful retaliation came from the highest ranks of the Company and took the form of an unjustified demotion and, ultimately, an unjustified termination of Mr. Weber's 30-year employment with Atlantic Zeiser.

11. The Company's retaliatory motivation is evidenced by its CEO Coco's statement when terminating Mr. Weber, "You got the ball rolling on this when you involved a lawyer."

12. In retaliating and discriminating against Mr. Weber, the Company engaged in willful and wanton violations of Section 1981, Title VII, the ADEA and the

NJLAD that were malicious, intentional, and done with a conscious disregard of Mr. Weber's civil rights.

13. The Company's financial condition demonstrates that neither the deterrent nor punitive purposes of a punitive damages award will be satisfied without a multi-million dollar award.

14. As a result, Mr. Weber is entitled to punitive damages in an amount of no less than $5,000,000.

## 5. DEFENDANT'S CONTESTED FACTS (Stated separately for each plaintiff. Proof shall be limited at trial to the matters set forth below. Failure to set forth any matter shall be deemed a waiver thereof.)

A. Defendant intends to prove the following contested facts with regard to liability:

1. Joseph Weber was never promoted to Vice President of Atlantic Zeiser, Inc.

2. Joseph Weber had little to no involvement in the non-impact printing business of Atlantic Zeiser.

3. Connie Stoerk never made any anti-Semetic remarks to Joseph Weber.

4. Connie Stoerk never made any discriminatory remarks about Mr. Weber's age.

5. Bruno Masser never made any anti-Semetic remarks to Joseph Weber.

6. Joseph Weber never informed Walter Klinger, the prior CEO of Atlantic Zeiser, that Bruno Masser made any anti-Semetic remarks.

7. Bruno Masser never made any comments to Walter Klingler regarding whether he needed an office

8. Joseph Weber never informed Walter Klingler, the prior CEO of Atlantic Zeiser, that Bruno Masser made comments about Joseph Weber needing an office.

9. Connie Stoerk never made comments that "things are going to change" and Mr. Weber is not going to be able to leave early to observe the Sabbath and Jewish Holidays.

10. Joseph Weber never informed Tom Coco and Michael Raimondo of Atlantic Zeiser , Inc. that Connie Stoerk made anti-Semetic comments to him.

11.   Joseph Weber never informed Tom Coco and Michael Raimondo of Atlantic Zeiser that Connie Stoerk made comments age discriminatory comments.

12.   Joseph Weber was not born in a concentration camp

13.   Joseph Weber received extensive complaints about his work performance.

14. Joseph Weber was reassigned from his office for work related reasons so that he could become familiar with the non-impact side of the business and to make Atlantic Zeiser more customer friendly.

15. Joseph Weber did not have four direct reports in June 2006.

16. Atlantic Zeiser did not fail to provide updated computer software to Joseph Weber.

17. Joseph Weber was not "ostracized" by fellow employees of Atlantic Zeiser after his alleged complaints.

18. Atlantic Zeiser did not inform employees of Atlantic Zeiser that Joseph Weber had retained an attorney and had made legal complaints against the company.

19. Joseph Weber refused to perform his job duties after his reassignment in June 2006.

20. Joseph Weber refused to move from his office although requested to do so repeatedly.

21. Joseph Weber received a copy of the workplace harassment policy.

22. Joseph Weber did not follow the harassment policy of Atlantic Zeiser in reporting complaints.

22.   Joseph Weber was not demoted in June 2006 as he did not receive a loss of pay or of company benefits.

23.   Tom Coco did not make the comment "You got the ball rolling" as to Joseph Weber's retaining of an attorney at the time Mr. Weber was let go from his employment.

24. The term "little doggy" is not an anti-Semitic reference.

25. Atlantic Zeiser was never able to perform an investigation of Joseph Weber's claims because Mr. Weber never informed the company of the alleged anti-Semitic and anti-age comments made to him

26. Mr. Weber arrived to work late, left work early and took extended lunch breaks.

27. The impact side of Atlantic Zeiser had diminished to the point where it could not sustain two full time employees.

28. In 1995, Atlantic Zeiser had one hundred-twenty (120) employees, the total number of employees today is thirty (30).

29. The discussions regarding performing further restructuring as to Joseph Weber occurred before any alleged complaints by Mr. Weber.

30. Mr. Weber participated in a company restructuring in 2005.

31. Joseph Weber was separated from his employment due to a reduction in force.

B. Defendant intends to prove the following contested facts with regard to damages: (This statement must include the factual basis for each defense against the plaintiffs claims for damages.)

1. Joseph Weber is not entitled to a Deferred Compensation Agreement as it was entered between him and a prior company.

2. Joseph Weber was informed that the Deferred Compensation Agreement no longer applied to him as testified to by Walter Klingler.

3. A life insurance policy was procured by Atlantic Zeiser to serve as a replacement for the Deferred Compensation Agreement.

4. Tom Coco and Michael Raimondo were not aware of the existence of the Deferred Compensation Agreement as employees of Atlantic Zeiser, Inc, but never having been employees of Atlantic Control Systems, Inc.

5. The plaintiff Joseph Weber, based on facts as set forth in the trial brief and at time of trial, is not entitled to an award of punitive damages.

6. The deferred compensation agreement is not binding on Atlantic Zeiser since it was entered between a predecessor company and Joseph Weber.

7. Mr. Weber did not suffer any to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering as he never treated medically or saw a counselor for such claims.

8. Mr. Weber failed to mitigate his damages as he did not actively seek employment after he was separated from Atlantic Zeiser, did not prepare a resume, etc.

9. Mr. Weber's long time financial security is not in ruins as he has many forms of income.

10. The plaintiff Joseph Weber, based on facts as set forth in the trial brief and at time of trial, is not entitled to an award of damages as to any of the Counts in the plaintiff's complaint.

11. Atlantic Zeiser Inc. cannot afford any punitive damage award given its current financial condition.

6. **PLAINTIFF'S WITNESSES** (Aside from those called for impeachment purposes, only the witnesses and rebuttal witnesses whose names and addresses are listed below will be permitted to testify at trial.)

A. On liability plaintiff intends to call the following witnesses who will testify in accordance with the following summaries:

1.     Joseph C. Weber 773 East Second  Street, Brooklyn, NY 11218:

   Mr. Weber is anticipated to testify concerning: (a) his employment background, performance and experience in the industry as well as with Defendant; (b) relevant events that occurred at Defendant; (c) the discrimination, harassment and retaliation he was subjected to during his employment at Defendant; (d) the complaints he made concerning discrimination and harassment at Defendant; (e) Defendant's retaliation in response to those complaints; (f) his religious background and observance; (g) the claims and allegations in the Complaint, including the damages he has suffered; and (h) the effect of Defendants' discriminatory actions upon him and damages he has suffered.

2.     Thomas Coco   34 Knapp Road, Pound Ridge, New York:

   Mr. Coco is anticipated to testify concerning: (a) Mr. Weber's employment background, performance and experience with Defendant; (b) Defendant's corporate structure, financial condition and business, personnel and employment decisions and practices; (c) relevant events that occurred at Defendant; (d) the discrimination, harassment and retaliation Mr. Weber was subjected to during his employment at Defendant; (e) the complaints Mr. Weber made concerning discrimination, harassment and retaliation at Defendant; and (f) Defendant's retaliatory termination of Mr. Weber's employment.

3.   <u>Michael Raimondo</u>   Ten Copley Court, Pompton Plains, NJ:

Mr. Raimondo is anticipated to testify concerning: (a) Mr. Weber's employment background, performance and experience with Defendant; (b) Defendant's corporate structure, financial condition and business, personnel and employment decisions and practices; (c) relevant events that occurred at Defendant; (d) the discrimination, harassment and retaliation Mr. Weber was subjected to during his employment at Defendant; (e) the complaints Mr. Weber made concerning discrimination, harassment and retaliation at Defendant; and (f) Defendant's retaliatory termination of Mr. Weber's employment.

4.   <u>Cornelia Stoerk</u> 43 Calumet Avenue, Lake Hiawatha, NJ 07034:

Ms. Stoerk is anticipated to testify concerning: (a) Mr. Weber's employment background, performance and experience with Defendant; (b) relevant events that occurred at Defendant; and (c) the discrimination, harassment and retaliation Mr. Weber was subjected to during his employment at Defendant.

5.   <u>Kyle Severson</u> 38 Old Wood Road,  Morris Plains, NJ 07950:

Mr. Severson is anticipated to testify concerning: (a) Mr. Weber's employment background, performance and experience with Defendant; (b) relevant events that occurred at Defendant; and (c) the discrimination, harassment and retaliation Mr. Weber was subjected to during his employment at Defendant.

6.   <u>Rick Vandervliet</u> 98 Quaker Avenue, Randolph NJ 07869:

Mr. Vandervliet is anticipated to testify concerning: (a) Mr. Weber's employment background, performance and experience with Defendant; (b) relevant events that occurred at Defendant; and (c) the discrimination, harassment and retaliation Mr. Weber was subjected to during his employment at Defendant.

7.   <u>John Shick</u>    120 Main Street, Apt. 4, Franklin, NJ:

Mr. Shick is anticipated to testify concerning: (a) Mr. Weber's employment background, performance and experience with Defendant; (b) relevant events that occurred at Defendant; and (c) the discrimination, harassment and retaliation Mr. Weber was subjected to during his employment at Defendant.

Plaintiff reserves the right to call as a witness at trial any rebuttal witnesses and any witnesses on Defendant's witness list.

B. On damages plaintiff intends to call the following witnesses who will testify in accordance with the following summaries:

Please see response to Section 6(A) above.

C. Defendant objects to the following witnesses for the reasons stated:

None.

7. **DEFENDANT'S WITNESSES** (Aside from those called for impeachment purposes, only the witnesses and rebuttal witnesses whose names and addresses are listed below will be permitted to testify at trial.)

A. On liability defendant intends to call the following witnesses who will testify in accordance with the following summaries:

1. Thomas Coco, 34 Knapp Road, Pound Ridge, New York -Mr. Coco is expected to offer testimony with respect to Mr. Weber's employment history and work performance with Atlantic Zeiser, the reasons for the reorganization at Atlantic Zeiser in June 2006, and Mr. Weber's reaction to the reorganization. Mr. Coco will also offer testimony as to the circumstances of Mr. Weber's termination from Atlantic Zeiser. Additionally, he will testify that he was unaware of any Deferred Compensation Agreement that Mr. Weber asserts entitlement through Atlantic Zeiser. Mr. Coco will further offer testimony as to Mr. Weber's failure to ever alert anyone at Atlantic Zeiser with respect to any complaints about any comments or actions of Connie Stoerk. Mr. Coco will offer testimony as to the changes in the printing industry from impact to non-impact systems during his tenure at Atlantic Zeiser.

2. Michael Raimondo  - Ten Copley Court, Pompton Plains, NJ Mr. Raimondo is expected to offer testimony with respect to Mr. Weber's employment history and work performance with Atlantic Zeiser, the reasons for the reorganization at Atlantic Zeiser in June 2006, and Mr. Weber's reaction to the reorganization. Mr. Raimondo will also offer testimony as to the circumstances of Mr. Weber's termination from Atlantic Zeiser. Additionally, he will testify that he was unaware of any Deferred Compensation Agreement that Mr. Weber asserts entitlement through Atlantic Zeiser. Mr. Raimondo will further offer testimony as to Mr. Weber's failure to ever alert anyone at Atlantic Zeiser with respect to any complaints about any comments or actions of Connie Stoerk. Mr. Raimondo will offer testimony as to the changes in the printing industry from impact to non-impact systems during his tenure at Atlantic Zeiser.

3. Walter Klingler 157 East 72nd St, New York, NY 10021 (when in USA)- Mr. Klingler is expected to offer testimony with respect to Mr. Weber's employment history and work performance at Atlantic Zeiser. Mr. Klingler is also expected to offer testimony that he never promoted Joseph Weber to Vice President of Customer Service and advised Mr. Weber that the Deferred Compensation Agreement no longer applied to Mr. Weber. Mr. Klingler will offer testimony as to the changes in the

printing industry from impact to non-impact systems during his tenure at Atlantic Zeiser.

4. Connie Stoerk -43 Calumet Avenue, Lake Hiawatha, NJ 07034 will offer testimony as to her friendship and work history with Mr. Weber.  She will deny making any anti-Jewish and/or anti-age comments to Mr. Weber.

5. Kyle Severson 38 Old Wood Road,  Morris Plains, NJ 07950- Mr. Severson may be called on as witness and is anticipated to testify concerning: (a) Mr. Weber's employment background, performance and experience with Defendant; (b) relevant events that occurred at Defendant; and (c) his reaction to the rorganization occurring at Atlantic Zeiser in June, 2006.

6. Rick Vandervliet 98 Quaker Avenue, Randolph NJ 07869- Mr. Vandervliet may be called on  as  a  witness and is anticipated to testify concerning: (a) Mr.  Weber's employment background, performance and experience with Defendant; (b) relevant events that occurred at Defendant; and (c) his reaction to the rorganization occurring at Atlantic Zeiser in June, 2006.

Defendant reserves the right to call as a witness at trial any rebuttal witnesses and any witnesses on Plaintiff's witness list.

B. On damages defendant intends to call the following witnesses who will testify in accordance with the following summaries:

1. Defendant reserves the right to call any of the above named liability witnesses as to damages.

2. Custodian of Records of Vermont National Life Insurance Company

One National Life Drive, Montpelier Vermont 05604

This witness will offer testimony as to the record keeping of Vermont National Life Insurance Company with respect to Joseph Weber's life insurance policy and that Mr. Weber was permitted to retain his life insurance policy paid by the company throughout his tenure at Atlantic Zeiser and that the insurance was retained as part of the deferred compensation plan.

Defendant reserves the right to call as a witness at trial any rebuttal witnesses and any witnesses on Plaintiff's witness list.

C. Plaintiff objects to the following witnesses for the reasons stated

8. **EXPERT WITNESSES** (No expert shall be permitted to testify at Trial unless listed below

and unless a summary of his qualifications and a copy of his report are attached hereto. Said summary shall be read into the record at the time he takes the stand, and no opposing counsel shall be permitted to question his expert qualifications unless the basis of objection is set forth herein).

A. Plaintiff's expert witnesses are:

None.

B. Defendant's objections to the qualifications of plaintiff's experts are:

None.

C. Defendant's expert witnesses are:

    1. Michael Raimondo (See attached copy of report).

D. Plaintiff's objections to the qualifications of defendant's experts are:

Michael Raimondo is not qualified to testify as an expert witness under the standards of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).


9. **PLAINTIFF'S DEPOSITIONS:** (List, by page and line, all deposition testimony to be offered into evidence. All irrelevant and redundant matters and all colloquy between counsel must be eliminated, unless ruled relevant. Deposition testimony to be used solely for impeachment purposes need not be listed).

A. On liability plaintiff intends to read into evidence the following:

Plaintiff does not anticipate introducing deposition testimony, except in the event of unavailability of any witness and/or for impeachment purposes.  Plaintiff reserves the right to designate deposition testimony in response to any designation made by Defendant.


B. On damages plaintiff intends to read into evidence the following:

Plaintiff does not anticipate introducing deposition testimony, except in the event of unavailability of any witness and/or for impeachment purposes.  Plaintiff reserves the right to designate deposition testimony in response to any designation made by Defendant.

C. Defendant objects to the deposition testimony set forth above for the reasons stated:

None.

10. **DEFENDANT'S DEPOSITIONS** (List, by page and line, all deposition testimony to be offered into evidence. All irrelevant and redundant matters and all colloquy between counsel must be eliminated, unless ruled relevant. Deposition testimony to be used solely for impeachment purposes need not be listed).

A. On liability defendant intends to read into evidence the following:

Defendant does not anticipate the introduction of deposition testimony, except in the event of unavailability of any witness and/or for impeachment purposes. Defendant reserves the right to designate deposition testimony in response to any designation by Plaintiff.

B. On damages defendant intends to read into evidence the following:

Defendant does not anticipate the introduction of deposition testimony, except in the event of unavailability of any witness and/or for impeachment purposes. Defendant reserves the right to designate deposition testimony in response to any designation by Plaintiff.

C. Plaintiff objects to the deposition testimony set forth above for the reasons stated

None.

11. **PLAINTIFF'S EXHIBITS**
(Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial. Any objection to an exhibit, and the reason for said objection, must be set forth below or it shall be deemed waived. All parties hereby agree that it will not be necessary to bring in the custodian of any exhibit as to which no such objection is made

A. Plaintiff intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each exhibit):

| No: | Description: | Date: | Bates No: | Deposition Ex. No: |
|---|---|---|---|---|
| PX_1 | Deferred compensation agreement for Joseph Weber. | 01/25/89 | JW_21 | |
| PX_2 | Memorandum from J. Weber to H. Citron, L. Haber, J. Partington, J. Schick, L. Shikman, C. Stoerk and M. Wenger re: Alpha Procedures and Responsibilities. | 04/14/97 | JW_58 & JW_60 | Schick_3 Stoerk_10 |
| PX_3 | [Exhibit Withdrawn] | | | |

| No: | Description: | Date: | Bates No: | Deposition Ex. No: |
|---|---|---|---|---|
| PX_4 | Letter of complaint from L. Haber to W. Klingler regarding anti-semitic comments by B. Masser; and Letter from B. Maser to L. Haber responding to same. | 10/31/98 02/07/08 | | Raimondo_33 |
| PX_5 | Unanimous consent of board of directors of AZ, Inc. re: Appointment of K. Oesch to replace W. Klingler as President of AZ, Inc. | 03/31/05 | | Raimondo_28 |
| PX_6 | K. Oesch memorandum in response to Management-Shareholder's request for repurchase of shares. | 05/7/05 | PR_30-PR_31 | Raimondo_35 |
| PX_7 | Email from J. Weber to T. Coco re: customer complaint about R. Vandervliet. | 05/18/06 | | Vandervliet_9 |
| PX_8 | Email from T. Coco to G. Schillinger re: Reorganization of customer service position held by J. Weber. | 06/13/06 | AZ_5 | Severson_4 Severson_11 Stoerk_6 Coco_7 |
| PX_9 | Email from K. Severson requesting lists of "individual responsibilities" from employees in connection with reorganization. | 07/10/06 | | Schick_4 Vandervliet_5 Severson_1 |
| PX_10 | Minutes of Special Board of Directors Meeting of AZ Inc. re: Appointment of O. Mehler to replace K. Oesch as President of AZ, Inc. | 07/18/06 | | Raimondo_29 Coco_12 Severson_8 Stoerk_7 |
| PX_11 | K. Oesch minutes of AZ, Inc. management meeting regarding, among other things, "unjust accusations and ridiculous claims" of "age and religion discrimination" alleged by J. Weber. | 07/18/06 | AZ_7-AZ_11 | Severson_8 Stoerk_7 Raimondo_10 |
| PX_12 | Email chain between T. Coco and M. Le Roux re: J. Weber discrimination claims. | 07/21/06 | AZ_16 | Raimondo_26 |
| PX_13 | Email chain between M. Le Roux and T. Coco re: J. Weber discrimination claims. | 07/28/06 | AZ_20 | Coco_11 |
| PX_14 | J. Weber executed EEOC charge of discrimination and retaliation based on Religion and Age. | 09/01/06 | JW_24-JW_27 | Stoerk_1 Coco_14 |
| PX_15 | Consolidated Financial Package of Orell Fussli Group (corporate parent of AZ, Inc.). | 12/31/06 | AZ_6271-AZ_6295 | Raimondo_30 |
| PX_16 | EEOC determination finding probable cause re: J. Weber retaliation claims. | 07/28/07 | | |

| No: | Description: | Date: | Bates No: | Deposition Ex. No: |
|---|---|---|---|---|
| PX_17 | Consolidated Financial Package of Orell Fussli Group (corporate parent of AZ, Inc.). | 12/31/07 | AZ_6296-AZ_6321 | Raimondo_31 |
| PX_18 | [Exhibit Withdrawn] | | | |
| PX_19 | Atlantic Zeiser organization chart. | | AZ_223 | Schick_6 Severson_10 Stoerk_9 Raimondo_13 |
| PX_20 | Atlantic Zeiser – Kyle Severson personal agenda. | | AZ_218 | Severson_2 |
| PX_21 | Atlantic Zeiser organization chart. | | JW_84 | Severson_3 Vandervliet_2 Raimondo_24 |
| PX_22 | [Exhibit Withdrawn] | | | |
| PX_23 | J. Weber's tasks at Atlantic Zeiser. | | AZ_12 | Severson_5 Vandervliet_3 Raimondo_5 Coco_6 |
| PX_24 | List of Atlantic Zeiser employees from January 1, 2006 to present. | | AZ_1-AZ_3 | Severson_9 Stoerk_12 Raimondo_11 Coco_10 |
| PX_25 | Employment contract between C. Stoerk and Atlantic Zeiser. | | | Stoerk_3 |
| PX_26 | Personnel policies and procedures: Reduction in force policy. | | AZ_96-AZ_99 | Stoerk_5 Raimondo_2 Coco_2 |
| PX_27 | Personnel policies and procedures: work rules and discipline. | | AZ_122-AZ_127 | Raimondo_3 Coco_4 |
| PX_28 | Personnel policies and procedures: paid holiday schedule. | | AZ_115-AZ_116 | Raimondo_4 Coco_5 |
| PX_29 | List of employee names, hire and termination dates. | | AZ_219 | Raimondo_12 |
| PX_30 | Proposed separation agreement and general release for J. Weber. | | AZ_59-AZ_65 | Raimondo_16 |
| PX_31 | CTST convention documents. | | JW_77-JW_82 | Raimondo_21 |
| PX_32 | J. Weber salary roster, 2001-2005. | | | Raimondo_27 |
| PX_33 | T. Coco handwritten, undated notes re: reorganization. | | AZ_66-AZ_67 | Coco_8 |
| PX_34 | Atlantic Zeiser position statement to EEOC in response to J. Weber discrimination charge. | | AZ_134-AZ_139 | Coco_13 |

| No: | Description: | Date: | Bates No: | Deposition Ex. No: |
|---|---|---|---|---|
| PX_35 | J. Weber business card identifying position title "V.P./Director Customer Service." | | JW_76 | Schick_5 |
| PX_36 | J. Weber birth certificate. | | JW_58 | |

Plaintiff reserves the right to offer into evidence any and all exhibits listed by Defendants, and any demonstrative exhibits or compilations of data or documents, and to introduce exhibits not listed above for impeachment and/or rebuttal.

B. Defendant objects to the introduction of plaintiff's exhibits (set forth number of exhibit and grounds for objection).

| Plaintiff Exhibit No: | Defendant's Objection(s) |
|---|---|
| PX 1 | Hearsay; Authentication |
| PX_2 | Relevancy; email occurred nine prior to Mr. Weber's discharge. Too remote to offer any probative value; Authentication |
| PX_4 | Subject to Confidentiality Order; Relevancy; document is too prejudicial and outweighs any probative value; Hearsay; Authentication |
| PX 5 | Subject to Confidentiality Order; Relevancy; Hearsay; Authentication |
| PX 6 | Relevancy; Authentication |
| PX 8 | Subject to Confidentiality Order; Authentication |
| PX 10 | Subject to Confidentiality Order; Relevancy; Hearsay; Authentication |
| PX 11 | Subject to Confidentiality Order; Prejudicial effect outweighs probative value; Made in context of settlement negotiations; Hearsay; Authentication |
| | |
| PX 13 | Email sent in context of settlement negotiations; Hearsay; Authentication |
| PX 14 | Relevancy-duplicative of testimony to be offered at trial; authenticity; Hearsay; Authentication |
| PX 15 | Subject to Confidentiality Order; Relevancy-company's financial statements not relevant to issues related to Weber's |

| Plaintiff Exhibit No: | Defendant's Objection(s) |
|---|---|
| PX 1 | Hearsay; Authentication |
|  | termination; Authentication |
| PX 16 | Relevancy; Hearsay; Authenticity. |
| PX 17 | Subject to Confidentiality Order; Relevancy-company's financial statements not relevant to issues related to Weber's termination; Authentication |
| PX 20 | Hearsay; Authentication |
| PX 23 | Authenticity; duplicative of testimony to be offered at trial; relevancy; Authentication |
| PX 24 | Subject to Confidentiality Order; Relevancy; Authentication |
| PX 25 | Relevancy; authenticity; Hearsay; Authentication |
| PX 26 | Subject to Confidentiality Order; Relevancy; Authentication |
| PX 27 | Subject to Confidentiality Order; Relevancy; |
| PX 28 | Subject to Confidentiality Order; Relevancy; Authentication |
| PX 29 | Subject to Confidentiality Order; Relevancy; Authentication |
| PX 30 | Document submitted in context of a settlement negotiation; prejudicial effect outweighs probative value; Authentication |
| PX 32 | Objection, if testimony or reference is sought with respect to any employee other Joseph Weber; Authentication |
| PX 33 | Subject to confidentiality order;  Authentication |
| PX 34 | Relevancy-duplicative of testimony to be offered at trial; authenticity |
| Px35 | Relevancy; authenticity; hearsay |
| PX 36 | Relevancy-defendant has agreed to stipulate to birthdate; authenticity |

**DEFENDANT EXHIBITS**
   (Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial. Any objection to an exhibit, and the reason for said objection, must be set forth below or it shall be deemed waived. All parties hereby agree that it will not be

necessary to bring in the custodian of any exhibit as to which no such objection is made.

    A. Defendant intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each exhibit).

| Exhibit No: | Description: | Date: | Bates No: |
|---|---|---|---|
| DX 1 | Email from Tom Coco to George Schilling | June 13, 2006 | AZ 5 |
| DX 2 | Employment at Will Statement | | AZ 6 |
| DX 3 | Joseph Weber Salary History | | AZ 13 |
| DX 4 | Personnel File of Joseph Weber | | AZ22-AZ-58 |
| DX 5 | Reorganization Notes of Tom Coco | | AZ66-67 |
| DX 6 | Corporate Workplace Harassment Policy | | AZ68-70 |
| DX7 | Personnel Policies and Procedures | | AZ71-127 |
| DX8 | Segment Report | | AZ128 |
| DX9 | Email from Tom Coco to Klaus Oesch | May 20, 2005 | AZ 129 |
| DX10 | Minutes of Discussions of May 2nd to May 6th | May 2-May 6 | AZ130-131 |
| DX11 | Thomas Coco letter | July 20, 2005 | AZ132-33 |
| DX12 | Email from Mike Raimondo | February 28, 2006 | AZ220 |
| DX13 | Email from Mike Raimondo | March 2, 2006 | AZ221 |
| DX14 | Email from Mike Raimondo dated May, 18,2006 | May, 18,2006 | AZ222 |
| DX14 | Closing of the Purchase By EMESCO Acquisition Corp dated May 8, 1991 | May 8, 1991 | AZ199-215, Raimondo 14 |
| DX15 | Organization Chart  with Kyle Severson as Director of Customer Services | | AZ 223 |
| DX16 | Draft Letter from Proskauer Rose | May 24, 2005 | JW00, Defendant Exhibit 7 |
| DX17 | Email from Tom Coco. | June 2, 2005 | JW 006, Defendant's Exhibit 8 |
| DX18 | EEOC Intake Questionnaire | December 8, 2006 | JW 034-JW045, Defendant's Exhibit 12 |
| DX19 | Deferred Compensation Agreement | January 25, 1989 | JW 021 Defendant's Exhibit 4 |
| DX20 | Unanimous written consent of board of directors of Atlantic Zeiser | March 31, 2005 | Raimondo 28, AZ 6228 |

| Exhibit No: | Description: | Date: | Bates No: |
|---|---|---|---|
| DX21 | Plaintiff's Responses to Defendants' First Set of Interrogatories | July 25, 2008 | Defendant's Exhibit 3 |
| DX22 | Complete Subpoened file from National Life Insurance Company | | Including but not limited to Defendant's Exhibit 22,24,2526, 27 and 29 |
| DX23 | Raimondo handwritten calendar | June –August 2006 | Raimondo 9 |
| DX24 | Raimondo email | June 12, 2006 | Raimondo 15 |
| DX 25 | Atlantic Zeiser Organization Chart | | JW084 Raimondo 24 |
| DX26 | Joseph Weber's resume | | JW100-101 |
| DX 27 | Severson job description | | AZ 218, Severson 2 |
| DX28 | Plaintiff's letter amendment to Interrogatory No. 23 | December 3, 2009 | |
| Dx29 | Severson email | July 10, 2006 | Severson 11 |
| DX 30 | Atlantic Zeiser product line | | Severson 14 |
| DX31 | Email from Tom Coco | March 7, 2005 | Vandervliet 7 |
| DX32 | Plaintiff's Amended Complaint | February 28, 2008 | Defendant's Exhibit 2 |
| DX33 | Expert Report | | Raimondo 34 |
| DX34 | Joseph Weber 2004 Federal Tax Return | | JW104-122 |
| DX35 | Joseph Weber 2004 State Tax Return | | JW123-130 |
| DX36 | Joseph Weber 2005 Federal Tax Return | | JW131-147 |
| DX37 | Joseph Weber 2005 State Tax Return | | JW148-156 |
| DX38 | Joseph Weber 2006 Federal Tax Return | | JW157-171 |
| DX39 | Joseph Weber 2006 State Tax Return | | JW172-182 |
| DX40 | Joseph Weber 2007 Federal Tax Return | | JW183-197 |
| DX41 | Joseph Weber 2007 State Tax Return | | JW198-207 |
| DX42 | Joseph Weber 2008 Federal Tax Return | | JW208-223 |
| DX43 | Joseph Weber 2008 State Tax Return | | JW224-233 |
| DX44 | Email from Joseph Weber | December 21, 2004 | AZ352 |
| DX45 | Email from Joseph Weber | May 17, 2006 | AZ489 |

| Exhibit No: | Description: | Date: | Bates No: |
|---|---|---|---|
| DX46 | Email from Joseph Weber | August 15, 2006 | AZ2695-2696 |
| DX47 | Email exchange from Roy Arnold | Commencing July 4, 2006 | AZ2509 |
| DX48 | Email exchange between Joseph Weber and Mary Santos | June 29, 2006 | AZ2512 |
| DX49 | Email from Joseph Weber (exchange) | June 15, 2006 | AZ2561 |
| DX50 | Email from Tom Coco | June 15,2006 | AZ568 |
| DX51 | Email exchange | Starting May 15, 2006 | AZ584-586 |
| DX52 | Email | August 7, 2006 | AZ607 |
| DX53 | Email from Joseph Weber | August 11,2006 | AZ710 |
| DX54 | Email from Joseph Weber | May 15, 2006 | AZ953 |
| DX55 | Email from Joseph Weber | May 10, 2006 | AZ1012 |
| DX56 | Email from Joseph Weber | May 10, 2005 | AZ1072 |
| DX57 | Email from Joseph Weber | May 12, 2005 | AZ1157-1158 |
| DX58 | Email from Joseph Weber | February 2, 2005 | AZ1240 |
| DX59 | Email from Joseph Weber | August 1, 2006 | AZ1472 |
| DX60 | Email from Joseph Weber | April 27, 2006 | AZ1542 |
| DX61 | Email from Joseph Weber | March 20, 2006 | AZ1780 |
| DX62 | Email from Joseph Weber | February 8, 2006 | AZ1869 |
| DX63 | Email from Joseph Weber | February 15, 2006 | AZ 2301 |
| DX64 | Email from Joseph Weber | April 5,2006 | AZ2995-6 |
| DX65 | Email from Joseph Weber | March 27, 2006 | AZ3505-6 |
| DX66 | Email from Joseph Weber | January 2, 2006 | AZ3667 |
| DX67 | Email from Tom Coco | March 7, 2005 | AZ4273-4 |
| DX68 | Email from Joseph Weber | April 7, 2006 | AZ5525 |
| DX69 | Email from Joseph Weber | February 10, 2006 | AZ5859-60 |
| DX70 | Email from Joseph Weber | December 21,2005 | AZ3675 |

| Exhibit No: | Description: | Date: | Bates No: |
|---|---|---|---|
| DX71 | Email from Joseph Weber | June 27, 2006 | JW 067. Defendant's Exhibit 16 |
| DX 72 | Memo regarding Corporate Workplace Harassment Policy | September 29, 1997 | AZ68-70 |

Defendant reserves the right to offer into evidence any and all exhibits listed by Plaintiff, and any demonstrative exhibits or compilations of data or documents, and to introduce exhibits not listed above for impeachment and/or rebuttal. Defendant further reserves the right to offer into evidence documents not specifically identified at this time depending upon the testimony of plaintiff and plaintiff's witnesses at time of trial.

   B. Plaintiff objects to the introduction of defendant's exhibits (set forth number of exhibit and grounds for objection).

| Defendant Exhibit No: | Plaintiff's Objection(s) |
|---|---|
| DX_1 | Hearsay (FRE 801, 802) |
| DX_2 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_3 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_4 | Relevance (FRE 401/402); Undue Prejudice Outweighs Probative Value (FRE 403) |
| DX_5 | Hearsay (FRE 801, 802) |
| DX_6 | Relevance (FRE 401/402); Hearsay (FRE 801, 802) |
| DX_8 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_9 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403) |
| DX_11 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_12 | Relevance (FRE 401/402); Undue Prejudice Outweighs Probative Value (FRE 403); Hearsay (FRE 801, 802) |
| DX_13 | Relevance (FRE 401/402); Undue Prejudice Outweighs Probative Value (FRE 403); Hearsay (FRE 801, 802) |
| DX_14 | Relevance (FRE 401/402); Undue Prejudice Outweighs Probative Value (FRE 403); Hearsay (FRE 801, 802) |

| Defendant Exhibit No: | Plaintiff's Objection(s) |
|---|---|
| DX_14[A] | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_16 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_17 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403) |
| DX_18 | Settlement Communication (FRE 408) |
| DX_21 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Authentication (FRE 901) |
| DX_22 | Relevance (FRE 401/402); Undue Prejudice Outweighs Probative Value (FRE 403); Hearsay (FRE 801, 802); Authentication (FRE 901) |
| DX_23 | Relevance (FRE 401/402); Hearsay (FRE 801, 802) |
| DX_24 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_26 | Relevance (FRE 401/402) |
| DX_28 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Authentication (FRE 901) |
| DX_30 | Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Relevance (FRE 401/402); Authentication (FRE 901) |
| DX_31 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_32 | Hearsay (FRE 801, 802) |
| DX_33 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Inadmissible Opinion (FRE 701); Not Qualified Expert (FRE 702) |
| DX_34 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Improper Character Evidence (FRE 404(b); Improper Impeachment Evidence (FRE 608) |
| DX_35 | Relevance (FRE 401/402); Hearsay (FRE 801, 802) ; Improper Character Evidence (FRE 404(b); Improper Impeachment Evidence (FRE 608) |
| DX_36 | Relevance (FRE 401/402); Hearsay (FRE 801, 802) ; Improper Character Evidence (FRE 404(b); Improper Impeachment Evidence (FRE 608) |
| DX_37 | ; Relevance (FRE 401/402); Hearsay (FRE 801, 802) ; Improper Character Evidence (FRE 404(b); Improper Impeachment Evidence (FRE 608) |

| Defendant Exhibit No: | Plaintiff's Objection(s) |
|---|---|
| DX_38 | Relevance (FRE 401/402); Hearsay (FRE 801, 802) ; Improper Character Evidence (FRE 404(b); Improper Impeachment Evidence (FRE 608) |
| DX_39 | Relevance (FRE 401/402); Hearsay (FRE 801, 802) ; Improper Character Evidence (FRE 404(b); Improper Impeachment Evidence (FRE 608) |
| DX_40 | Relevance (FRE 401/402); Hearsay (FRE 801, 802) ; Improper Character Evidence (FRE 404(b); Improper Impeachment Evidence (FRE 608) |
| DX_41 | Relevance (FRE 401/402); Hearsay (FRE 801, 802) ; Improper Character Evidence (FRE 404(b); Improper Impeachment Evidence (FRE 608) |
| DX_42 | Relevance (FRE 401/402); Hearsay (FRE 801, 802) ; Improper Character Evidence (FRE 404(b); Improper Impeachment Evidence (FRE 608) |
| DX_43 | Relevance (FRE 401/402); Hearsay (FRE 801, 802) ; Improper Character Evidence (FRE 404(b); Improper Impeachment Evidence (FRE 608) |
| DX_44 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403) |
| DX_45 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_46 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_47 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_48 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_49 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_50 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_51 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_52 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |

| Defendant Exhibit No: | Plaintiff's Objection(s) |
|---|---|
| DX_53 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_54 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_55 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_56 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_57 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_58 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_59 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_60 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_61 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_62 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_63 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_64 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_65 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_66 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |

| Defendant Exhibit No: | Plaintiff's Objection(s) |
|---|---|
| DX_67 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_68 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_69 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_70 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |
| DX_71 | Relevance (FRE 401/402); Hearsay (FRE 801, 802); Undue Prejudice Outweighs Probative Value (FRE 403); Authentication (FRE 901) |

(COPIES OF EXHIBITSARE TO BE MADE FOR OPPOSING COUNSEL, AND A BENCH BOOK OF EXHIBITS IS TO BE DELIVEREDTO THE JUDGE AT THE START OF TRIAL. IF COUNSEL DESIRES TO DISPLAY EXHIBITSTO THE JURY, SUFFICIENTCOPIES SHOULD BE AVAILABLETO PROVIDE EACH JUROR WITHA COPY; ALTERNATIVELY, ENLARGED PHOTOGRAPHIC OR PROJECTED COPIES MAY BE USED).

## 13. PLAINTIFF'S LEGAL ISSUES

1. Defendant has discriminated against Mr. Weber in violation of Section 1981 by subjecting him to disparate treatment, harassment and a hostile work environment in the basis of his Race (Jewish ancestry and/or ethnic characteristics).

2. In addition, Defendant has discriminated against Mr. Weber in violation of Section 1981 by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Mr. Weber because of his Race (Jewish ancestry and/or ethnic characteristics).

3. Defendant has violated Section 1981 by subjecting Mr. Weber to retaliation for complaints of, and opposition to, Defendant's discrimination and harassment by, among other acts of retaliation, denying Mr. Weber an agreed upon deferred compensation benefit, and ultimately terminating his employment.

4. Defendant has discriminated against Mr. Weber in violation of Title VII by subjecting him to disparate treatment, harassment and a hostile work environment

on the basis of his Religion and Race (Jewish ancestry and/or ethnic characteristics).

5.  In addition, Defendant has discriminated against Mr. Weber in violation of Title VII by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Mr. Weber because of his Religion and Race (Jewish ancestry and/or ethnic characteristics).

6.  Defendant has violated Title VII by subjecting Mr. Weber to retaliation for complaints of, and opposition to, Defendant's discrimination and harassment by, among other acts of retaliation, denying Mr. Weber an agreed'upon deferred compensation benefit, and ultimately terminating his employment.

7.  Defendant has discriminated against Mr. Weber on the basis of his Age in violation of the ADEA by subjecting him to disparate treatment, harassment and a hostile work environment based upon his Age.

8.  In addition, Defendant has discriminated against Mr. Weber in violation of the ADEA by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Mr. Weber because of his Age.

9.  Defendant has violated the ADEA by subjecting Mr. Weber to retaliation for his complaints of, and opposition to, Defendant's discrimination and harassment by, among other acts of retaliation, denying Mr. Weber an agreed upon deferred compensation benefit, and ultimately terminating his employment.

10. Defendant has discriminated against Mr. Weber in violation of the New Jersey Law Against Discrimination by subjecting him to disparate treatment, harassment and a hostile work environment on the basis of his Age, Race (Jewish ancestry and/or ethnic characteristics) and Religion.

11. In addition, Defendant has discriminated against Mr. Weber in violation of the New Jersey Law Against Discrimination by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Mr. Weber because of his Age, Race (Jewish ancestry and/or ethnic characteristics) and Religion.

12. Defendant has violated the New Jersey Law Against Discrimination by subjecting Mr. Weber to retaliation for his complaints of, and opposition to, Defendant's discrimination and harassment by, among other acts of retaliation, denying Mr. Weber an agreed upon deferred compensation benefit, and ultimately terminating his employment.

13. As a direct and proximate result of Defendant's unlawful discriminatory and retaliatory conduct in violation of Section 1981, Title VII, the ADEA and/or the

New Jersey Law Against Discrimination, Mr. Weber has suffered, and continues to, suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits.

14.  As a further direct and proximate result of Defendant's unlawful discriminatory and retaliatory conduct in violation of Section 1981, Title VII, the ADEA and/or the New Jersey Law Against Discrimination, Mr. Weber has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

15.  Defendant's unlawful discriminatory and retaliatory conduct in violation of Section 1981, Title VII, the ADEA and/or the New Jersey Law Against Discrimination was willful, wanton, outrageous and malicious, was intended to injure Mr. Weber, and was done with reckless indifference to Mr. Weber's civil rights.

## 14. DEFENDANT'S LEGAL ISSUES

1.  Defendant denies that it has discriminated against Mr. Weber in violation of Section 1981 by subjecting him to disparate treatment, harassment and a hostile work environment in the basis of his Race (Jewish ancestry and/or ethnic characteristics). It contends that it complied with the law at all times.

2.  Defendant denies that if has discriminated against Mr. Weber in violation of Section 1981 by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Mr. Weber because of his Race (Jewish ancestry and/or ethnic characteristics). It contends that it complied with the law at all times.

3.  Defendant denies that it has violated Section 1981 by subjecting Mr. Weber to retaliation for complaints of, and opposition to, Defendant's discrimination and harassment by, among other acts of retaliation, denying Mr. Weber an agreed upon deferred compensation benefit, and ultimately terminating his employment. It contends that it complied with the law at all times.

4.  Defendant denies that it has discriminated against Mr. Weber in violation of Title VII by subjecting him to disparate treatment, harassment and a hostile work environment on the basis of his Religion and Race (Jewish ancestry and/or ethnic characteristics). It contends it complied with the law at all times.

5.  Defendant denies it has discriminated against Mr. Weber in violation of Title VII by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Mr. Weber because of his Religion and Race (Jewish

ancestry and/or ethnic characteristics). It contends that it complied with the law at all times.

6. Defendant denies it has violated Title VII by subjecting Mr. Weber to retaliation for complaints of, and opposition to, Defendant's discrimination and harassment by, among other acts of retaliation, denying Mr. Weber an agreed upon deferred compensation benefit, and ultimately terminating his employment. It contends it complied with the law at all times.

7. Defendant denies it has discriminated against Mr. Weber on the basis of his Age in violation of the ADEA by subjecting him to disparate treatment, harassment and a hostile work environment based upon his Age. It contends it complied with the law at all times.

8. Defendant denies it has discriminated against Mr. Weber in violation of the ADEA by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Mr. Weber because of his Age. It contends it complied with the law at all times.

9. Defendant denies it has violated the ADEA by subjecting Mr. Weber to retaliation for his complaints of, and opposition to, Defendant's discrimination and harassment by, among other acts of retaliation, denying Mr. Weber an agreed upon deferred compensation benefit, and ultimately terminating his employment. It contends it complied with the law at all times.

10. Defendant denies that it has discriminated against Mr. Weber in violation of the New Jersey Law Against Discrimination by subjecting him to disparate treatment, harassment and a hostile work environment on the basis of his Age, Race (Jewish ancestry and/or ethnic characteristics) and Religion.

11. Defendant denies it has discriminated against Mr. Weber in violation of the New Jersey Law Against Discrimination by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Mr. Weber because of his Age, Race (Jewish ancestry and/or ethnic characteristics) and Religion. It contends that it complied with the law at all times.

12. Defendant denies it has violated the New Jersey Law Against Discrimination by subjecting Mr. Weber to retaliation for his complaints of, and opposition to, Defendant's discrimination and harassment by, among other acts of retaliation, denying Mr. Weber an agreed upon deferred compensation benefit, and ultimately terminating his employment. It contends that it complied with the law at all times.

13. Defendant denies as a direct and proximate result of Defendant's unlawful discriminatory and retaliatory conduct in violation of the Section 1981, Title VII, the ADEA and/or theNew Jersey Law Against Discrimination, Mr. Weber has suffered, and continues to, suffer monetary and/or economic damages, including but not

limited to, loss of past and future income, compensation and benefits. Defendant denies any unlawful discriminatory and retaliatory conduct. It contends it complied with the law at all times.

14. Defendant denies as a direct and proximate result of Defendant's unlawful discriminatory and retaliatory conduct in violation of Section 1981, Title VII, the ADEA and or the New Jersey Law Against Discrimination, Mr. Weber has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering. Defendant denies any unlawful discriminatory and retaliatory conduct. It contends it complied with the law at all times.

15. Defendant's denies any unlawful discriminatory and retaliatory conduct in violation of Section 1981, Title VII, the ADEA, and the New Jersey Law Against Discrimination was willful, wanton, outrageous and malicious, was intended to injure Mr. Weber, and was done with reckless indifference to Mr. Weber's civil rights. Defendant further denies any discriminatory and retaliatory conduct. It contends that it complied with the law at all times.

16. Defendant contends that Joseph Weber was advised that the Deferred Compensation Agreement was no longer in effect and Mr. Weber was aware on the date of his termination that the Deferred Compensation Agreement did not apply to him.

17. Mr. Weber was discharged from his employment due to economic changes in the printing industry resulting in a decreased demand for impact products. Mr. Weber was further discharged due to his failure to embrace his new job duties upon his reassignment in June, 2006.

18. Defendant denies that the plaintiff Joseph Weber was ever promoted to Vice President, Customer Service at Atlantic Zeiser, Inc.

19. Defendant reserves the right to try any of its affirmative defense pled pending plaintiff's proofs at time of trial.

## 15. MISCELLANEOUS
Set forth any other matters which require action by, or should be brought to the attention of the Court.

None.

## 16. JURY TRIALS:

Not Later Than: _____

A. Each party shall submit to the District Judge and to opposing counsel, a Trial Brief or

memorandum in accordance with General Rule 27, with citations to authorities and arguments in support of its position on all disputed issues of law. In the event a brief shall not be filed, the delinquent party's complaint or defense may be stricken.

Pursuant to the Honorable Dickinson R. Debevoise's letter of February 2, 2010, all trial briefs are to be filed by March 15, 2010.

B. Counsel for each party shall each submit to the Judge with a copy to opposing counsel, written request for instructions to the jury. Supplemental requests for instructions may be submitted at any time prior to argument to the jury. All requests for instructions shall be plainly marked with the name and number of the case, shall contain citations of supporting authorities, if any, and shall designate the party submitting same. In the case of multiple requests by a party, these shall be numbered in sequence and each request shall be on a separate sheet of paper.

Pursuant to the Honorable Dickinson R. Debevoise's letter of February 2, 2010, all jury instructions are to be filed by March 15, 2010.

C. If any hypothetical questions to be put to an expert witness on direct examination, these shall be submitted to the Judge and opposing counsel.

N/A

D. Counsel shall submit to the Judge, with a copy to opposing counsel, their proposed <u>voir dire,</u> if any.

Pursuant to the Honorable Dickinson R. Debevoise's letter of February 2, 2010, all voir dire are to be filed by March 15, 2010.


17. **NON JURY TRIALS**

N/A

Not Later Than: _____

A. Each party shall submit to the District Judge and to opposing counsel, a Trial Brief or memorandum in accordance with General Rule 27, with citations to authorities and arguments in support of its position on all disputed issues of law. In the event a brief shall not be filed, the delinquent party's complaint or defense may be stricken.

B. Counsel for each party shall each submit to the Judge with a copy to opposing counsel, written request for instructions to the jury. Supplemental requests for instructions may be submitted at any time prior to argument to the jury. All requests for instructions shall be plainly marked with the name and number of the case, shall contain citations of supporting authorities, if any, and shall designate the party submitting same. In the case of multiple requests by a party, these shall be numbered in sequence and each request shall be on a separate sheet of paper.

C. If any hypothetical questions to be put to an expert witness on direct examination, these shall be submitted to the Judge and opposing counsel.

18. **TRIAL COUNSEL** (List the names of trial counsel for all parties).

Attorneys for Plaintiff:

Scott Browning Gilly
Kenneth P. Thompson
Ariel Y. Graff
Thompson Wigdor & Gilly LLP
85 Fifth Avenue
New York, NY 10003
212-257-6800 (telephone)
212-257-6845 (facsimile)


Attorney for Defendant:

James Scott Murphy, Esq.
Peter Cipparulo, III
Garrity, Graham, Murphy, Garofalo & Flinn
72 Eagle Rock Ave.
East Hanover, NJ 07936


19. **BIFURCATION:** (Where appropriate, the issues relating to liability shall be severed and tried to verdict. Thereafter, all issues relating to damages issues will be tried).
The issue of liability and damages SHALL NOT be tried separately.

20. **ESTIMATED LENGTH OF TRIAL:**

Twelve (12) to Fifteen (15) combined trial days for liability and for damages.

AMENDMENTS TO THIS PRETRIAL ORDER SHALL NOT BE PERMITTED UNLESS THE COURT DETERMINES THAT MANIFEST INJUSTICE WOULD RESULT IF THE AMENDMENT IS DISALLOWED. THE COURT MAY, FROM TIME TO TIME, SCHEDULE CONFERENCES AS MAY BE REQUIRED EITHER ON ITS OWN MOTION OR AT THE REQUEST OF COUNSEL

s/Scott Browning Gilly
Attorney For Plaintiff

s/Peter Cipparulo, III
Attorney For Defendant

_____

UNITED STATES MAGISTRATE JUDGE

DATED:

(EXHIBIT LIST FOLLOWS)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Case No. _____          Civil/Criminal _____

Jury/Non-Jury _____          Trial _____

-vs-

Appearances:

No.

## Description of Exhibit

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Case 2:08-cv-00977-DRD-MAS   Document 75   80 Filed 03/01/10   Page 38 of 39   P.003/004
Case 2:08-cv-00977-DRD-MAS   Document 80 Filed 03/01/10   Page 38 of 39
PM      FROM ATLANTIC ZEISER                           973 228 8064        T-647   P.004/005   F-325

I offer this report for the purpose of providing expert testimony as to the increasing specialization of the printing industry for high security coding and personalization technologies. This industry can be generally classified as impact systems and non-impact business. The non-impact or system side of the business are capital equipment sales of large high speed printing machines for label and packaging markets that also print on plastic for bar coding or magnetic encoding of plastic cards. The impact side of the business includes antiquated numbering heads that print by impacting paper such as invoices, check and receiving reports. The technology for the impact side has been around for more than fifty (50) years and is rapidly diminishing.

During the last twenty years, with the introduction of computers into mainstream business, there has been a substantial reduction in the demand for the impact side of the business. Atlantic Zeiser, itself, is a niche business that has sought to capitalize on the increase demand for the system side of the business by offering total system solutions to governments and industries such as printing, plastic card, telecom, pharmaceutical, banking, packaging, labels and cosmetics. The company specializes in the industrial application of sensitive variable data onto various types of media - whilst ensuring full data and process integrity.

This sophisticated technology has allowed its users to choose from a wide variety of modular building blocks and scalable software platforms within the core technologies inkjet printing, laser marking, chip programming, magnetic encoding, product transport, product tracking, data verification and more. These can be effectively combined to achieve the most efficient system solution tailored to virtually any specific need.

These type of services could not be performed through the antiquated impact side of the business for two reasons. First, the limited technology involved in the impact side of the business is

insufficient for the security demands for coding, personalization technologies and variable imaging. Second, even in those rare instances where numbering heads could be utilized, the printing or coding could not be produced on a cost effective basis to remain competitive in this highly specialized and competitive industry. It is anticipated that the already significantly reduced demand for impact printing will continue to decrease until it becomes non-existent in the industry.

I base these statements on my experience in the industry. I have been the Chief Financial Officer of Atlantic Zeiser, Inc. for the last eleven (11) years. Additionally, I have extensive auditing, accounting, and reported related experience with prior employers. I am a graduate of St. Peter's College with a B.S. in Accounting and have obtained my MBA in Finance from Fairleigh Dickinson University. I have no publications authored in the last ten (10) years and I have not testified as an expert at trial or in depositions in the previous four years.

I am not receiving compensation for this report or for testimony in this litigation.

Very truly yours,

Michael Raimondo