<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JOSEPH C. WEBER, | : | |
| | : | Civ. No. 08-977(DRD) |
| Plaintiff, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| ATLANTIC ZEISER, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| _____ | : | |

Thompson Wigdor & Gilly, LLP
85 Fifth Avenue
New York, New York 10003
By: Scott B. Gilly, Esq.
    Attorneys for Plaintiff

Garrity, Graham, Murphy, Garofalo & Flinn
72 Eagle Rock Avenue
P.O. Box 438
East Hanover, NJ 07936
By: Peter Cipparulo, III, Esq.
    Attorneys for Defendant.

**<u>Debevoise, Senior District Judge</u>**

    In this action Plaintiff, Joseph C. Weber, alleges that Defendant, Atlantic Zeiser, Inc., subjected him to disparate treatment in the conditions of his employment and subjected him to a hostile work environment because of i) his Jewish ancestry and ethnicity, ii) his Jewish religion and iii) his age. He further alleges that Atlantic Zeiser retaliated against him by changing his work assignments and working conditions and terminating his employment because he made

complaints of discrimination to Atlantic Zeiser directly and through an attorney.

Plaintiff worked for Atlantic Zeiser or related corporations for 30 years in a highly responsible position. At one point during this period he bought shares in the corporation. In 2005 he and three other employees sold their shares back to the corporation. Atlantic Zeiser moves to permit evidence of Plaintiff's failure to declare the proceeds of the sale on Plaintiff's 2005 tax return. Plaintiff moves to preclude evidence or testimony regarding Plaintiff's personal federal and state income taxes.

Atlantic Zeiser has shown no basis for finding that the tax returns would be relevant to the substantive and damage issues in this case. Their relevance would be as they bear upon Plaintiff's credibility i.e., he lied to the respective governments by failing to declare his gains on the sale of stock.

On deposition Plaintiff testified that he received back for his stock "a little bit more than what I put in . . . I think it was $135[000] or something like that." In connection with the in limine motions Atlantic Zeiser, for the first time, produced documents that seemed to show that Plaintiff possessed 3.126 shares that he had purchased for 120,014 Euro Dollars and which he sold in 2005 for 126,165 Euro Dollars (roughly $152,000). There is no authentication of these documents and for the most part they are handwritten notes. In a post hearing submission Atlantic Zeiser states, "Defendant does not intend to introduce into evidence documents regarding the stock transfer," and therefore it follows that Atlantic Zeiser's cross-examination leading to introduction of the income tax returns is based on Mr. Weber's testimony that he was paid a little bit more than he paid for the stock, namely $135,000.

In its original moving papers Atlantic Zeiser described the use to which it seeks to put the

tax returns: ". . . defendant is merely seeking to introduce evidence that Mr. Weber failed to pay his taxes" and that "after receiving this better [stock purchase] deal Mr. Weber failed to make the necessary declaration, a 1099 Form." (Brief at 6).  As the argument on the cross-motions developed, it appeared that Atlantic Zeiser may have narrowed the use to which it seeks to put the income tax returns simply to challenging Mr. Weber's credibility by showing that he made a false statement on the returns.  It has not stated precisely what the false statement is.

It is Atlantic Zeiser's contention that Plaintiff derived a gain from this sale, and that he filed a false tax return for 2005 by failing to report the gain.  This, Atlantic Zeiser argues, is relevant to Plaintiff's character of truthfulness or non-truthfulness.  Hunter v. GM Corp., 149 Fed. App. 316 (6th Cir. 2005).

Fed. R. Evid. 608(b) provides:

> (b) Specific instances of conduct.  Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence.  They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The outcome of these motions is governed by two Court of Appeals cases.  United States v. Sullivan, 803F 2d 87 (3d Cir. 1986) and Carter v. Hewitt, 617 F. 2d 961 (3d Cir. 1980) .  In the second of these cases Carter filed suit charging that a prison guard had assaulted him.  At the trial of his case the court admitted in evidence a letter that he had written to another inmate describing how to file a complaint charging guards with brutality.  The court held that the letter was admissible for two purposes - it reflected on Carter's credibility and it was evidence of a modus

operandi in filing false brutality complaints.

On appeal Carter challenged the admission of the letter on the ground that it was extrinsic evidence prohibited by Evid. R. 608(b). The Court noted the purpose of the rule requiring a cross-examiner to take his witness's answer concerning his alleged misconduct as he gives it and not permitting the introduction of extrinsic evidence to refute it. . . "if refutation of the witness's denial were permitted through extrinsic evidence, these collateral matters would assume a prominence at trial out of proportion to their significance." Id., at 970.

The Court observed that the great majority of the decisions finding violations of rule 608(b) do so when the extrinsic evidence that is challenged is obtained from a witness other than the one whose credibility is under attack. "When, however, the extrinsic evidence is obtained from and through examination of the very witness whose credibility is under attack, as is the case here, we must recognize that the rule's core concerns are not implicated. There is, however, an even more significant reason for finding no violation of the extrinsic evidence rule here: Carter did not deny having written the letter." Id. "The principal concern of the rule is to prohibit impeachment of a witness through extrinsic evidence of his bad acts when this evidence is to be introduced by calling other witnesses to testify." Id. at 969.

In Sullivan the defendant had been charged with conspiracy to violate, and violations of, the Hobbs Act, 18 U.S.C. § 1951. Sullivan testified, and on cross-examination the government questioned him about the accuracy of the federal income tax forms and financial disclosure forms he had filed. On appeal Sullivan challenged the admission of this evidence as impermissible extrinsic evidence. The Court upheld this line of questioning. City Carter, it stated:

> The government contends that Sullivan's fraudulent replies on the forms in question

4

>were probative of his truthfulness and therefore admissible.  See <u>United States v. Zandi,</u> 769 F. 2d 229, 236 (4th Cir. 1985) (failure to disclose income on income tax and financial forms probative of truthfulness and admissible); <u>Carter v. Hewitt</u>, 617 F. 2d 961 (3d Cir. 1980) (where witness concedes alleged acts, they can be used to impeach credibility in cross-examination, even if otherwise extrinsic).  As the prosecution points out, Sullivan's direct testimony presented the issue of his credibility to the jury.  Sullivan's credibility was in fact the central issue litigated in the case, as the defense presented only Sullivan and the character witnesses during its portion of the trial.  The defendant was prepared to stand or fall on the credibility of his own testimony, as supported by character witnesses.  Thus it was not error for the district court to allow the prosecution to attack Sullivan's credibility.

Rule 608(b) provides that specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility may not be proved by extrinsic evidence.  Such instances may, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness concerning his character for truthfulness or untruthfulness.  The issue here is whether on cross-examination Atlantic Zeiser may ask Plaintiff if he failed to declare the gain on his stock sale on his 2005 tax return, and, if he asserts that he did, whether Atlantic Zeiser can confront him with his return to show that he did not.

Plaintiff relies on <u>Carter v. Hewitt</u>, <u>supra</u>, to support his argument that the tax return would be extrinsic evidence prohibited by Rule 608(b), that the cross-examiner may inquire into specific instances of untruthful conduct but may not resort to extrinsic evidence to impeach the witness's denial of such conduct.  In other words, the cross-examiner must take his witness's answer as the witness gives it.  The reasons for the rule against allowing extrinsic evidence are particularly strong if Atlantic Zeiser seeks to establish that Mr. Weber "failed to pay his taxes" or "failed to make the necessary declaration, a 1089 Form."  In the first place, Atlantic Zeiser has not produced admissible evidence establishing what gain, if any, Plaintiff received on the sale of

5

his stock.  The handwritten notes and other documents it belatedly produced are not authenticated or explained.  There has been no attempt to set forth Plaintiff cost basis.  He had to retain very expensive attorneys to negotiate a sales price and there is no attempt to compute other costs of sale.

Although the Court in Sullivan appeared to allow a wide-ranging inquiry into fraudulent replies on Sullivan's tax returns, the opinion does not disclose the nature and obviousness of the fraud.  No need for other testimony or evidence other than the returns themselves was shown.  Here, on the other hand, an extensive inquiry would have to be undertaken to determine whether, in fact, the returns were false.  Other witnesses would have to be called to establish the bases for tax liability.  Even if it is undisputed that Mr. Weber signed and filed the returns themselves, the other requirement of Carter is not met: "the extrinsic evidence [would not be] obtained from and through examination of the very witness whose credibility is under attack."  617 F. 2d at 970.  The mere showing of the tax returns would not of itself establish that Mr. Weber failed to pay taxes.

There is one exception to this ruling.  It is possible that Mr. Weber made a statement on the returns that, without further evidence, is demonstrably false.  Atlantic Zeiser, whose attorneys have had access to the returns, has not proffered such a statement.  If there were such a statement it might meet the Carter requirement of evidence obtained from and through examination of the very witness whose credibility is under attack.

In light of the foregoing Plaintiff's motion to preclude testimony regarding Plaintiff's personal federal and state income taxes will be resolved as follows: Atlantic Zeiser may inquire of Plaintiff as to the manner in which he treated on his income tax returns the proceeds of the

2005 sale of his stock to Atlantic Zeiser or its affiliate but Atlantic Zeiser may not confront Plaintiff with or otherwise utilize in its examination Plaintiff's federal and state income tax returns, unless, after prior approval of the court, Atlantic Zeiser confronts Plaintiff with a specific statement in a return that is inconsistent with Plaintiff's trial or deposition testimony. Atlantic Zeiser's motion to permit evidence of Plaintiff's failure to declare the proceeds of the 2005 sale of stock to Atlantic Zeiser or its affiliate on Plaintiff's 2005 Federal and State income tax returns will be resolved as follows: Atlantic Zeiser may inquire of Plaintiff concerning his treatment of the proceeds of the sale of stock on his 2005 tax returns, and, after prior approval of the Court, it may confront Plaintiff with a specific statement in a return that is inconsistent with his trial or deposition testimony.

      The Court will file an order implementing this opinion.

                                                  *s/ Dickinon R. Debevoise*
Dated: March 31, 2010                                    DICKINSON R. DEBEVOISE
                                                         U.S.S.D.J.